ALBERT G. McCORMICK, APPELLANT, v. JOSIAH S. McCOR-
MICK, ANNA M. G. McCORMICK, JESSE H. LACEY, CATHA-
RINE T. LACEY, AND OTHERS, APPELLEES.

1. **Partnership.** A portion of the members of a firm, with the
consent of all, had largely overdrawn their account, by
which, together with a large amount of bad and uncollectible
debts held by the firm, it became insolvent. In an action for
an account by a member who had not drawn his full share;
*Held*, that he was not entitled to interest upon what was due at
each annual rest, from the time the capital stock was so far im-
paired that money had to be borrowed to take its place.

2. ――――. Where all the members of a firm drew out of the busi-
ness, from time to time, for several years, such sums as they
saw fit, there being a tacit agreement among the members that
this might be done, and the sums thus drawn out being properly
charged on the books of the firm, such books being open to the
inspection of all the members, and there being no misrepre-
sentation; *Held*, that the firm had no lien upon the money thus
drawn out, it having been drawn with their consent.

THIS was an appeal from a decree rendered by SAVAGE,
J., in the district court for Douglas county. The sub-
stantial facts in the case appear in the opinion.

*John D. Howe* and *Carrigan & Osborn*, for appellant.

I. The law of partnership gives the plaintiff pecu-
liar rights; and he has also the additional rights and
equities of one standing in a relation of trust and confi-
dence.

A partner has a lien, a specific lien on the present and
future property of the firm, for his share of the capital
stock, and funds, and for all money advanced by him for
the use of the firm, and also for all debts due the firm
for money abstracted by another partner from such stock
and funds beyond his share. Such sums may be follow-
ed by virtue of the lien: and the partner may subject

any other property into which the firm money may have been converted. Story on Part., Sec. 97 and citation. Coll. on Part. (4 ed.), Secs. 125, 117, 135, and notes. This " lien," indeed, results from his undivided ownership. And the " highest good faith " must prevail among copartners. Parsons on Part., p. 233 *et seq*. The petition sets out a case much like that in 4 Bosw., *infra*. See generally upon the subject of the trust rights of a partner in property purchased with firm money—and what constitutes fraud in law upon a copartner's rights. *Wade v. Rusher*, 4 Bosw., 537. *Newman v. Cordell*, 43 Barb., 457. *Brooks v. Martin*, 2 Wall., 70. *Pomeroy v. Benton*, 14 Am. Law Reg. N. S., 308. 2 Story's Eq., Secs. 976, 977, 1197. *Comstock v. Buchanan*, 57 Barb., 127. *Sumner v. Hampson*, 8 Ohio, 365. See generally on questions of trust: 2 Story's Eq. Jur., Sec. 1201 *et seq*. Hill on Trustees. *McCartney v. Bostwick*, 32 N. Y., 53. *Averill v. Loucks*, 6 Barb., 19.

It follows from this partner's lien, or ownership, that all property ever acquired by a firm remains its property until severed from the joint estate with the consent of all the partners. Herein it devolves upon the defendants to show that they derived title to the funds withdrawn by the consent of the plaintiff, if he was upon an equal footing with them:—his ownership must be shown to have been divested; but if they were entrusted with the joint assets and the management of the firm by the plaintiff, they must make it appear that they acquired title to the funds they withdrew from the trust estate through a legal and honest course of dealing, and pursuant to a faithful discharge of their trust. If there was fraud; if there was an incapacity to contract on the part of the plaintiff; if there was the trust relation; if the minds of the parties did not meet; there was no consent. See what is deemed consent, 1 Story's Eq. Jur., Secs. 222, 223; Pars. on Part., 278, 282. When with-

drawals are entered on the books, where parties are on a footing of equality and had actual knowledge of the entries, the books constitute evidence of consent; but it is easily repelled.

II. The plaintiff entrusted the whole management of the firm to his three copartners. His story in a nutshell is: I came into an old established firm; I ventured, or, rather, my father for me, ventured my all in it; my brothers and relations constituted the other members; the firm did a large business; I trusted the other members entirely; on the strength of that trust I left my fortune in the firm; in six years I drew out $6,000, while those whom I trusted drew out $173,000—all there was in the firm, ruining it and me. They got my all. The total capital was some $80,000—the profits $100,000. Yet Jesse and Josiah have drawn their capital and share of the profits and over $30,000 besides; in that is over $17,000 of my money. Story says there are cases which strike one at first sight in such a way as to induce the belief that fraud and wrong have been done. This is such a case.

If it be not true, as John and Albert swear, that he trusted all to the rest; and he stood by, *acting for himself, relying upon himself*, leaving all of his capital and profits in the firm, seeing it drawn out by his copartners for every extravagance, while he lived closely and economically,—seeing himself and his family impoverished, then we have here a moral phenomenon ! If, as all the great features of the case show, he did " trust all to the rest," then he had no consent to give; he had loaned it to the other members. What Albert was among these men and in this firm is shown by the proofs. See generally: 1 Story's Eq. Jur., Secs. 307, 302, 308, 311, 315, 321, 322, 323. Hill on Trustees, *145, *162, and n. 2. When one trusts with a blind and credulous trust,

"there is no consent, or negligence, or laches." Willard's Eq. J., p. 170, 175, 189. 9 Paige, 241. 4 Cow., 717. 'There was collusion, in the legal sense, between the three parties, John, Jesse, and Josiah. It is shown by their acts; they exhausted the firm, each knowing what the other was doing, what the probable effect would be, and what the cost would be to him who trusted and relied on them. 1 Green. Ev., Sec. 93. 17 Ohio St., 505.

*G. W. Ambrose*, for defendants, J. L. and Anna G. McCormick.

I. In order to subject the property of the wife, *bona fide* hers, either by purchase or gift, it must be proven that she was cognizant of the fraud charged, and enabled the husband, by the expenditure of the money upon her property, to perpetrate the wrongs complained of. The only testimony on the subject is that of Mrs. McCormick, placed upon the witness stand by plaintiff. She denies any knowledge of the source of her husband's money, except that she knew he had large transactions outside of the firm, and supposed the money came from that source. She denies any collusion with her husband or any knowledge of the standing of the firm, or her husband's standing therein. This is the plaintiff's testimony. By it he is bound.

II. It is sought to subject the property of an innocent person, one without fraud on her part, to the payment of a partner's equitable lien upon assets traced into the property. This is the position of plaintiff. It is a very familiar rule that one standing by, and seeing his property dealt with in a manner inconsistent with his rights, and makes no objection, cannot afterwards have relief. His silence is acquiescence, and estopps him. Perry on Trusts, ss. 870. *Graham v. Brinkhead Rail-*

*way*, 2 M. & G., 146.   *Duke of Leeds v. Amherst*, 2 Phillips, 123.   *Stafford v. Stafford*, 1 DeGex & Jones, 202.   *Stoughton v. Lynch*, 2 Johns. Ch., 217.   *Sullivan v. Portland*, 4 Otto, 806.

III.   The books disclosed truly the date and the amount of money expended.   By the books, his own account—entered by his own hand, a partner is bound. They are *his* books, and he is estopped from either disputing, or shielding himself by his plea of ignorance of what they contained.   He says he could have found out, if he had looked at the books, but he had no curiosity. The books of a partnership are to speak their language, and to record their transactions, and there is an understanding that the books are to be appealed to, to tell the true situation of the business.   To admit them as true, is but effectuating their agreement and using their own criterion and test to ascertain the truth.   The ordinary presumption is that all partners have access to their books, and know the entries which they contain, and the only thing that can rebut this presumption is residence at a distance, or a course of dealing precluding access. Such is the universal language of the books.   1 Philips, Evidence, 448.   *Simons v. Kirtley*, 1 Monroe, 80.   *Reno v. Crane*, 2 Blackf., 217.   *Foster v. Andrews*, 2 Penrose & Watts, 160.   *Woodward v. Winship*, 12 Pick., 430, 436.   *Richardson v. Wyatt*, 2 Dessau., 471.   *Rihenhard v. Hovey*, 13 Ohio, 303.   *Cameron v. Watson*, 10 Rich. Eq., 92.   *Heartt v. Corning*, 3 Paige, 572.

*E. Wakeley* (for defendants Jesse H. Lacey, Catherine T. Lacey, and legal representatives of Sarah J. Miser, a sister of Mrs. Lacey, who died after the commencement of the action, and against whom it was revived), argued the cause upon the facts alone.

MAXWELL, CH. J.

On or about the fifteenth day of March, 1865, the plaintiff and defendants Josiah and John McCormick, and Jesse H. Lacey, entered into partnership as wholesale grocers, in the city of Omaha, under the name and style of John McCormick and Co. The plaintiff paid into the concern, as a part of the capital stock, the sum of $7,768.92, Josiah S. McCormick the sum of $1,560.-70, Jesse H. Lacey $19,194.91, and John McCormick the sum of $55,343.17. The partnership was to continue as long as mutually agreeable to the parties. The profits of the firm were to be divided as follows: The plaintiff, one-sixth, Josiah S. McCormick, one-sixth, Jesse H. Lacey, one-third, and John McCormick, one-third. The firm continued in business until about the first of March, 1871. The profits of the firm amounted to at least $100,-000, and the bad and uncollectible debts amounted to about $50,000. The firm was heavily in debt, and a large amount of assets were by mutual consent left in the hands of John McCormick for the payment of the debts. It is claimed by the plaintiff that after the application of these assets to the payment of the firm debts, there was still a considerable deficiency, which was made up by him and John McCormick.

In the year 1866, Lacey purchased lots 6, 7, and 8, in block 47, in the city of Omaha, and took the title thereto in the name of his wife; and during the years 1867 and 1868 he built upon lots 6 and 7 a large brick house, at a cost of about $30,000, the money to pay for the same being drawn out of the concern and regularly entered on the books of the firm. He also drew out other considerable sums, all of which were duly charged to him on the firm books. It is also clearly shown from the testimony, that all of the members of the firm, including the plaintiff, drew out of the firm such sums as

they saw fit, the sums so drawn being charged to them on the books of the firm. It also appears that all the members of the firm, except the plaintiff, largely overdrew their account.

In the years 1867 and 1868, Josiah S. McCormick erected a costly residence upon a lot owned by his wife in the city of Omaha, the money to pay for the erection of said dwelling-house being drawn out of the firm, and regularly entered on the firm books.

In the year 1874, the plaintiff commenced an action against the defendants in the district court of Douglas county, praying for an accounting, and that it be decreed that Catherine T. Lacey holds the title to lots 6 and 7 above described, with the improvements thereon, in trust for the use and benefit of said firm, and that they be sold and the proceeds applied as may be just and proper. Also, that Anna M. G. McCormick be declared to hold the residence erected by Josiah S. McCormick, in trust for said firm, and that the same may be sold and the proceeds properly applied. The defendants answered the petition of the plaintiff. In October, 1877, the case was tried and judgment rendered dismissing the petition as to Anna M. G. McCormick, Catherine T. Lacey, and the heirs of Sarah J. Miser. The plaintiff appeals to this court. The court found that the plaintiff is entitled to receive from John McCormick the sum of $6,237.46, from J. S. McCormick the sum of $7,568.66, from J. H. Lacey $2,959.38; and that John McCormick is entitled to receive from J. S. McCormick the sum of $15,137.31, and from J. H. Lacey the sum of $5,918.73. The sums found due by the court below appear to be in conformity to the testimony.

The plaintiff claims he is entitled to interest upon what was due at each annual rest, from the time the capital stock was so far impaired that money had to be borrowed to take its place. This might be proper in

some cases, but not in this. It is apparent in this case that the deficiency arises from the very large amount of bad and uncollectible debts held by the firm, amounting to about $50,000. It is evident that but for these debts the firm would have been able to have met all its obligations. The firm was doing a large amount of business, evidently selling considerable quantities of goods on credit. The amounts due the firm appear to have been considered as assets, without considering the probabilities of collecting the same, and I think the testimony clearly shows that there was no intention on the part of Lacey and J. S. McCormick to cripple, much less to bankrupt, the firm. The only question, therefore, for this court to consider, is whether the court below erred in dismissing the case as to Catherine T. Lacey, Anna M. G. McCormick, and the heirs of Sarah J. Miser, it being claimed that Sarah J. Miser acquired the title to lot 8, in block 47, from Mrs. Lacey, without consideration, and in fraud of creditors and the rights of plaintiff.

Each partner while acting within the scope of the partnership business, is deemed to be the authorized agent of the firm, and his contract, while so engaged, will be held to be the contract of every member of the firm. This power to bind the firm and to dispose of the partnership property, is sometimes regarded as arising from the agency growing out of the relations of partners, and sometimes from the community of interest by which each partner owns the whole in common with the others, but has no exclusive property therein. It probably rests on both foundations. 1 Parsons on Contracts, 175. But if a partner steps outside of the scope of the partnership business, and attempts to transfer the co-partnership property to himself, he acts beyond the scope of his authority, and will not bind the members of the firm, as one member of a firm cannot become the

owner of the property of the firm without the consent and against the wishes of the other members thereof. And if a partner who exclusively superintends the business and accounts of the concern should, by concealment of the true state of the accounts and business, purchase the shares of his partners, for an inadequate price, by means of such concealment, the purchase will be held void. 1 Story's Eq. Juris., Sec. 220.

In the case at bar each partner drew out of the firm such sums as he saw fit, and there seems to have been a tacit agreement among the members that this might be done, no objections being interposed by any one. The sums so drawn out were properly charged to the person drawing the same on the books of the firm, and these books were open to the inspection of all the members. The plaintiff knew that Lacey and J. S. McCormick were erecting costly houses, and that the money to construct the same was being drawn out of the firm, yet he made no objection whatever; and this failure to object on his part, under the circumstances of this case, must be construed as a consent to such use of the partnership funds. And partnership funds being thus used with the tacit consent of the partners, ceased—at least so far as the partners are concerned—to be charged with the lien of the partnership.

It is claimed that the plaintiff attended to selling goods, and that he knew nothing about the books of the firm, of the condition of its accounts, and that he relied entirely upon his partners. It is a sufficient answer to this plea to say that he appears to be a man of ordinary intelligence, that no misrepresentations were made to him, and that if he did not know the actual condition of the affairs of the firm it was his own fault, as he had the means of knowledge at hand. It is apparent, however, from the testimony, that all the members of the firm, up to and including the year 1869, supposed that they were

doing a large and prosperous business, and no one seems to have thought that the large sums thus drawn out by the partners would cripple the firm or cause its insolvency. The lien of the partnership being gone, it follows that the plaintiff can have no relief in this form of action, whatever his rights may be as a creditor. The judgment of the district court is

AFFIRMED.