THE FIRST NATIONAL BANK OF HAVERHILL *vs.* NATHAN C. HARRISON & others.

Essex.   October 7, 1929. — May 26, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Equity Pleading and Practice,* Appeal; Master: recommittal, rulings of law, exceptions to report. *Evidence,* Competency, Relevancy and materiality, Of intent. *Equity Jurisdiction,* To reach and apply equitable assets.

A suit in equity was referred to a master under a rule in the usual form. He filed a report of the facts without a report of the evidence. A party filed sundry objections, some of which were to the failure by the master to find certain facts and some to his failure to make certain rulings of law requested in connection with his determinations of fact; and also filed a motion to recommit the report. It did not appear from the report that any requests for the rulings of law were made to the master before his draft report was presented to counsel or that he might not have governed himself in accordance with the principles of law contained in the requested rulings in so far as they were correct. An interlocutory decree was entered by order of a judge of the Superior Court overruling the exceptions and confirming the report. No order was entered on the motion to recommit. Upon appeal by the excepting party, it was *held,* that

(1) The motion to recommit was denied by implication by the entry of the interlocutory decree;

(2) The disposition of that motion was within the discretion of the judge; and, no abuse of discretion appearing, there was no error in the denial thereof;

(3) The decree could not be reversed so far as it overruled the exceptions to the refusal to make findings of fact;

(4) The findings not being contradictory nor plainly wrong, they must stand;

(5) Although parties are entitled as of right to have a master make rulings of law so far as necessary to instruct himself in his de-

termination of the facts, in the circumstances the party had not saved valid exceptions to the refusal to make the rulings and the decree was not erroneous in that it overruled such exceptions.

In a suit in equity under § 86A, added to G. L. c. 223 by St. 1925, c. 170, against a man, his wife and a corporation, to reach and apply the man's interest in shares of stock in the corporation standing in the wife's name to the satisfaction of a judgment against the man obtained by the plaintiff in a previous action, a master found that the man and the wife had been the principal stockholders in another corporation which had gone into receivership; that subsequently the man discussed with the president of a bank the possibility of financing a purchase of the assets of that corporation; and that thereupon the following transactions occurred: the defendant corporation was organized with a capital of seven hundred fifty shares óf stock; the wife in writing arranged for a loan to her by the bank to be secured by stock in the new corporation, the proceeds of the loan to be used to purchase the assets of the old corporation; the bank advanced the money in the form of a cashier's check payable to her and received a note signed by the man but not by her; the receiver secured leave of court to sell the assets of the old corporation to the man for a price equal to the amount of the cashier's check, received that check and executed a bill of sale of those assets to the wife "as authorized by . . . order of . . . [the man] .·. . in consideration of . . . [the amount of the check] in cash . . . paid by or for account of . . . [the man]"; the wife in writing offered to sell the assets to the new corporation for five hundred forty-five shares of its stock and to purchase one hundred more shares for cash on certain conditions; her offer was accepted and a certificate for those shares was issued to her; and she forthwith turned the shares over to the bank, authorizing it in writing to hold them "as collateral security for loan made to . . . [the man]." Subject to exceptions by the defendants, the master excluded evidence offered by the defendants with reference to the state of mind of the president of the bank, who had died before the suit was brought, in regard to the person to whom the loan was being made, whereby the defendants offered to show substantially that the president had declared that the bank would not make the loan to the man, but was willing to make it to the wife under an arrangement similar to that above described; and excluded a question to the man as to whether he had intended to purchase the assets of the old corporation for himself. The master concluded that the man was the real owner of the shares of stock standing in the wife's name. He did not report the evidence except such as was material to the defendants' exceptions. The defendants filed exceptions to the exclusion of the evidence. By order of a judge of the Superior Court, who heard no further evidence, there were entered an interlocutory decree overruling the exceptions and confirming the report, and a final decree in the plaintiff's favor. Upon appeal by the defendants, it was *held*, that

(1) The evidence excluded was relevant: the intent of the bank, the lender, was material on the question, whether the loan was made to the man or not;

(2) Such evidence was not incompetent in that it contradicted or modified a writing, or that it related to negotiations and conversations by the parties leading up to and finally embodied in any contract in writing intended by the parties to express their complete agreement;

(3) Such evidence was competent and should have been admitted by the master;

(4) Although the facts found warranted the master's conclusion that the man was the real owner of the shares of stock, the defendants were entitled to have him make his findings and conclusion upon all the competent evidence;

(5) In the absence of a report of the evidence, neither this court nor the judge of the Superior Court was in a position to know that the evidence excluded could not have caused a different conclusion;

(6) In such circumstances no decree properly could be entered upon the master's report either by this court or by the judge of the Superior Court;

(7) The defendants' exceptions to the report should have been sustained;

(8) The decrees were reversed and the suit was remanded to the Superior Court for further proceedings.

BILL IN EQUITY under § 86A, added to G. L. c. 223 by St. 1925, c. 170, filed in the Superior Court on December 24, 1926, and afterwards amended, against Nathan C. Harrison, Gertrude E. Harrison, Harrison Supply Company, Inc., L. H. Daloz Company and Citizens National Bank.

The suit was referred to a master. The bill, material facts found by him, proceedings in the Superior Court after the filing of his report and an interlocutory and a final decree are described in the opinion. The interlocutory decree was entered by order of *Lummus*, J., and the final decree by order of *F. T. Hammond*, J. A decree also was entered dismissing the bill as to the defendant L. H. Daloz Company. The defendants Nathan C. Harrison, Gertrude E. Harrison and Citizens National Bank appealed from the interlocutory decree. Those defendants and the defendant Harrison Supply Company, Inc., appealed from the final decree.

*M. J. Mulkern*, for the defendants.

*J. P. Sullivan*, (*J. DeCourcy* with him,) for the plaintiff.

WAIT, J. This is a bill in equity brought under St. 1925, c. 170, (G. L. c. 223, § 86A), which, so far as here material, provides that "Upon motion of the plaintiff at any time after a verdict has been rendered . . . in his

favor in any action at law in the Superior Court . . . and before final judgment . . . therein, such court shall thereupon have jurisdiction in equity by appropriate procedure and process to cause to be reached, held and thereafter applied in payment of any judgment . . . in his favor in such action . . . any property, right, title or interest, legal or equitable, real or personal, including any shares or interests in corporations organized under the laws of the Commonwealth or of the United States, and located or having a general office in the Commonwealth, fraudulently conveyed by the defendant with intent to defeat, delay or defraud his creditors or to defeat or delay the plaintiff in the satisfaction of his claim, or purchased, or directly or indirectly paid for, by him, the record or other title to which is retained in the vendor or is conveyed to a third person with intent to defeat, delay or defraud the creditors of the defendant or to defeat or delay the plaintiff in the satisfaction of his claim." Before the bringing of the bill the plaintiff had obtained a verdict in the sum of $23,497.70 in an action at law in the Superior Court against the defendant Nathan C. Harrison; and it sought in this proceeding to have held, reached and applied in payment of the judgments (which have since been obtained) the interest of said Harrison in certain shares of stock in the Harrison Supply Company, Inc., a corporation organized and having a general office in this Commonwealth, which stood in the name of Gertrude E. Harrison, his wife. After a final decree which established Harrison's liability to the plaintiff in $23,858.60 with interest from February 7, 1927, and $56.55 costs; adjudged Harrison to be "the equitable and beneficial owner" of six hundred and forty-three shares of the stock the record title to which stands in the name of Gertrude E. Harrison, which are subject to a lien owned by the Citizens National Bank for $15,500 as collateral security for a note of Nathan C. Harrison and Rupert A. Fairbairn, dated October 24, 1927, for $15,500 payable to that bank; ordered payment, and, in the event of nonpayment within twenty days from the date of the decree, ordered sale by a special master therein named of the shares

subject to the lien, and application of the proceeds (1) to the costs and expenses of the sale and fees of the special master, (2) to the payment of the plaintiff, and (3) the balance if any to Gertrude E. Harrison; the case is before us upon an appeal by the Harrisons and the defendant bank from an interlocutory decree confirming the report of a special master, overruling certain exceptions of the defendants Nathan C. and Gertrude E. Harrison, to that report, and, by implication, denying a motion of the Harrisons that the report be recommitted; and an appeal by the Harrisons, the defendant bank and Harrison Supply Company, Inc., from the final decree.

The order to the master required him "to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request." He reported no evidence except such as was material to exceptions claimed by the defendants to the exclusion of certain evidence. The defendants Harrison filed twenty-six objections, of which fourteen were to failures to find facts as requested by them, four were to failures to make rulings of law incidental to his determinations of fact as requested, six were to exclusions of evidence, and two were to findings of fact that the loan hereinafter described was made to Nathan C. Harrison and that the stock in Harrison Supply Company, Inc., was his stock. Before the hearing upon the confirmation of the report they moved to recommit the report in order that the master might recognize and apply the four rulings of law as incidental to his determinations of fact, might make the fourteen findings of fact desired, and might admit the evidence excluded. In this way all that the defendants desired to urge was before the court. *Mason* v. *Albert*, 243 Mass. 433.

The denial of the motion to recommit was in the discretion of the trial judge and no abuse appears. No appeal from it can be sustained. *Bartlett* v. *The Roosevelt, Inc.* 258 Mass. 494. *Goodman* v. *Goldman*, 265 Mass. 85, 87. No valid appeal lies from the order overruling the exceptions to the refusal to find facts as requested. *Mackintosh* v. *Houghton*, 242 Mass. 286. *Forino Co.* v. *Karnkeim*, 240 Mass. 574,

580. *Tuttle* v. *Corey*, 245 Mass. 196, 204. The findings made are not self-contradictory nor plainly wrong and must stand. *Volpe* v. *Sensatini*, 249 Mass. 132. *Warfield* v. *Adams*, 215 Mass. 506.

The desired rulings of law and the rulings excluding evidence remain to be considered. Although a master has ordinarily no duty to make rulings of law, yet, in the conduct of the hearings and incidentally in his determination of questions of fact, questions of law often are involved upon which he must instruct himself. An erroneous decision may result from a mistaken instruction of this kind. A party has a right to have the master proceed upon correct rules of law. To secure this right he may make requests of the master and, after objection, may save exceptions to their refusal. There is, however, nothing in the report to show that any requests for instructions to himself in matter of law were made to the master before his draft report was presented to counsel, or that in his consideration he may not have acted upon the principles embodied in the requests presented with the objections to his report, in so far as they state sound law. No valid ground for sustaining exceptions appears in them. *Raymond* v. *Stone*, 246 Mass. 421, 425. *Cook* v. *Scheffreen*, 215 Mass. 444, 448 and cases cited.

The master found and there was no dispute that Nathan C. Harrison indorsed the notes in suit in 1921. In 1900 he organized the Harrison Supply Company, in which he and his wife, each having an investment of about $26,000, were the principal stockholders and owned fifty-five per cent of the stock. That company did a prosperous business, and some time before 1920, another corporation, the International Abrasive Corporation, acquired all its stock. Nathan C. Harrison was president and largest individual stockholder in the Abrasive Corporation. In 1922 the Abrasive company through business reverses went into the hands of a receiver under a decree of the District Court of the United States for this district. The subsidiary company also was involved, and its assets were entrusted to the same receiver. Nathan C. Harrison became insolvent as a result. For more than a year he was employed by the

receiver. The Abrasive company owed $25,000 to the Citizens National Bank of Boston on a note which it held. Harrison discussed with the president of that bank and the receiver the possibility of financing a purchase of the assets of the old Harrison Supply Company. Eventually a new corporation, Harrison Supply Company, Inc., was organized in February of 1924 with a capital stock of seven hundred and fifty shares, par value $100 each, of which, by the articles of organization executed and filed February 15, 1924, Gertrude E. Harrison subscribed for six hundred and forty-three shares, her brother Rupert A. Fairbairn subscribed for one share, and Violette L. Reeder, a clerk in the law office of the president of the Citizens National Bank, subscribed for one share. Those articles provided that of the six hundred and forty-five shares to be issued, one hundred shares were to be issued for cash, one hundred and fifty shares against merchandise, fifty-five shares against machinery and fixtures, and three hundred and forty shares against bills receivable. On the same February 15, Gertrude E. Harrison agreed in writing with the bank that if it would loan to her, or to such person as she should designate, $40,000 approximately, to be secured by the stock of the new company, the proceeds to be used to purchase the assets of the old company, she would guarantee the bank against loss on the $25,000 loan theretofore made to the Abrasive company. At the time she had an equity of about $15,000 in a dwelling house. The bank, thereupon, advanced $40,000 of which $32,000 was in the form of a cashier's check to her. She did not sign the note for $40,000. That was signed by Nathan C. Harrison, her husband, and Rupert A. Fairbairn, her brother. On February 14, 1924, the receiver filed a petition for confirmation of a sale as of January 31, 1924, to Nathan C. Harrison of most of the assets and properties of the old company, reciting that he had received an offer from Nathan C. of $32,000, which he had considered reasonable and had accepted. The decree was entered the same day; and, under that date, the receiver obtained the cashier's check for $32,000 and executed a bill of sale transferring to Gertrude E. Harrison "as

authorized by written order of even date herewith of Nathan C. Harrison . . . in consideration of the sum of $32,000 in cash . . . paid by or for account of Nathan C. Harrison." Gertrude E. Harrison then, in writing, offered to sell the assets and properties thus purchased by her to the Harrison Supply Company, Inc., for five hundred and forty-five shares of its stock, and further offered to purchase one hundred shares to be paid for in cash on condition that that company execute a written agreement relieving her of all personal liability on her guarantee of the $25,000 note of the Abrasive company. This offer was accepted. The new company issued one certificate to Gertrude E. Harrison for six hundred and forty-three shares, one certificate to Fairbairn for one share and one to Reeder for one share. All these were immediately indorsed in blank and turned over to the Citizens National Bank with the usual powers of attorney and a letter signed by Gertrude E. Harrison stating: "You are hereby authorized to take and receive as collateral security for loan made to Nathan C. Harrison and Rupert A. Fairbairn 643 shares of the capital stock of the Harrison Supply Co., Inc. standing in my name, and you are further authorized to hold such collateral as security for loan made this day in the sum of $40,000., or for any renewals or extensions of the same." The president of the bank was fully informed of the financial condition of the Harrisons. These facts would, at least, support the inference, which the master made later, that Nathan C. Harrison was the real owner of the six hundred and forty-three shares which stood in the name of Gertrude E. Harrison.

The master excluded testimony of conversations of Nathan C. Harrison with the president of the bank (who had died before the bill in equity was brought) prior to the receiver's sale, with reference to the state of mind of the president of the bank in regard to the person to whom the bank was loaning, by which the defendants offered to show (1) that Harrison had said that he did not intend to purchase the business; (2) that the president had passed on the receiver's bill of sale and stated his satisfaction with it; (3) that he had declared that the bank would

not loan to Nathan C. Harrison the money to purchase the old company's assets because of Harrison's debts; (4) that he had stated that while the bank would not loan Harrison because that would expose its money to attachment by other creditors of Harrison, it would loan to Mrs. Harrison enough to make the purchase if some arrangement could be made whereby she guaranteed the bank against loss on the Abrasive liability, and provided the money lent her should go directly to the receiver, a corporation be formed and substantially all its stock be pledged with the bank to secure the repayment of the $32,000, and in addition that Harrison himself should give notes to the company and insure himself for the benefit of the bank to secure payment; and (5) that the president, when he gave the cashier's check to Gertrude E. Harrison, told her that he did not want to burden her unnecessarily with evidence of indebtedness; he would have to have her guaranty of the Abrasive note, but felt that if he received that guaranty the bank would be protected if substantially all the new corporation's stock were pledged to it to secure a note signed by Harrison and Fairbairn as he had confidence in Harrison's ability to build up value into the new company, and if she would consent to have her stock pledged upon the note of her husband and her brother that would satisfy the bank. In addition he excluded a question to Harrison whether he intended to purchase the assets of the old company for himself.

This evidence was competent. It was relevant. It did not modify or contradict any writing, nor was it part of negotiations and conversations leading up to and finally embodied in any written contract intended by the parties to contain their full agreement. Ordinarily, at least, there cannot be a loan to a person to whom the lender does not intend to loan and who does not intend to accept the loan. In deciding whether a loan exists, evidence of these intents is relevant and material. This evidence should have been admitted and considered by the master. All the evidence is not reported. We are, therefore, not in position to know that the master's findings of fact on the

material issue of ownership of the stock could not, as matter of law, have been affected by its consideration, and that he might not have been led to a different conclusion. We think the defendants are entitled to findings of fact by the master based upon his consideration of all competent and material evidence, and that in the absence of such findings neither the trial judge, who heard no additional evidence, nor this court, on appeal, can properly enter a decree based upon the present report. The exceptions to the report based upon the exclusion of the testimony in question should have been sustained. The decree overruling these exceptions and confirming the report, and the final decree are reversed. The case is remitted to the Superior Court for further proceedings in accord with this opinion.

*Ordered accordingly.*