IRVING SHULKIN & another *vs.* MORRIS SHULKIN.

Suffolk.    April 5, 1938. — September 14, 1938.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Partnership*, Accounting, Rights and obligations of partners among themselves, Dissolution.    *Interest.    Equity Jurisdiction*, Plaintiff's clean hands.    *Equity Pleading and Practice*, Costs, Interest.    *Fiduciary*.

In an accounting as to a partnership of three partners who had agreed to share profits and losses equally but had made no agreement as to withdrawals or for the payment of interest, where it appeared that two of the partners, without the knowledge of the third, each had withdrawn twice as much as the third, it was proper in the final decree to charge each partner with the amount of his drawings and to charge each of the first two with interest on the amount his drawing was in excess of the third partner's drawing, such interest to be shared equally by all the partners.

The mere fact that entries of withdrawals in books of a partnership were incorrectly stated to be "cash purchases" and "purchases," even if it be assumed that they were so made fraudulently or illegally, did not preclude treating them, in a partnership accounting in equity, in their true character where to do so did not require reliance upon the fraud or illegality.

On facts found by a master in a suit for an accounting as to a partnership of three partners respecting salaries paid to two active partners by agreement between them, provisions of a final decree approving such payments during active service and disapproving payments during periods of vacation and disability were proper.

Charges against a partner in a partnership accounting for profits made by him in secretly conducted transactions which were within the scope of the partnership business were proper.

No error appeared in a final decree in a suit in equity for a partnership accounting which required that receivership expenses be paid from the partnership fund, and refused to allow the plaintiff the expense of an accountant employed by him or to allow either party counsel fees and  · expenses.

By reason of the provisions of § 31 of G. L. (Ter. Ed.) c. 108A, the provisions of § 38 as to damages for breach of a partnership agreement did not apply in a suit for an accounting of a partnership whose term was at will.

In a suit for a partnership accounting, an innocent partner was entitled to the same share of secret profits and fraudulent withdrawals by his partner as he would have received if there had been no wrongdoing; the other partner, after being charged with the amount of the secret profit and such fraudulent withdrawals was entitled to a share thereof.

No error appeared in the circumstances in a direction in a final decree in a suit in equity for a partnership accounting that interest be computed to the date of the decree where some· partners were charged as to improper withdrawals and secret profits.

BILL IN EQUITY for a partnership accounting, filed in the Superior Court on October 29, 1936.

After a hearing upon the report of a master by *Pinanski,* J., and rulings made by him, a final decree was entered adjudging the partnership fund to be $37,797.78; awarding no costs, and directing payment to Irving Shulkin of $19,519.76; to Benjamin Shulkin of $10,954.15; and to Morris Shulkin of $7,323.87. All parties appealed.

*F. I. Rose,* (*A. H. Grossman & H. C. Kagan* with him,) for the plaintiff Irving Shulkin.

*R. L. Weiner,* for the plaintiff Benjamin Shulkin, submitted a brief.

*S. B. Stein,* (*H. J. Stein & L. Shulman* with him,) for the defendant.

Cox, J. This is a bill in equity filed on October 29, 1936, in which the plaintiffs seek not only a dissolution of the partnership alleged to exist between them and the defendant, but also an accounting of the partnership affairs. A receiver, who was appointed on November 2, 1936, operated the partnership business until December 29, 1936, when its assets were sold at public auction. There is a substantial sum available for distribution. The parties are brothers and, as copartners, did business under the name of Allen Stationery Co. The case was referred to a master to determine, in the first instance, whether the trade name, Allen Stationery Co., was a partnership asset or belonged to the plaintiff Irving Shulkin. The master found that the name was an asset of the partnership. The record, which is abbreviated by stipulation, contains no other reference to this finding, but the plaintiff Irving Shulkin, who claims to have appealed from a decree confirming this finding, now waives any right under that alleged appeal. Another master then heard the parties and found that in 1919 the plaintiff Irving Shulkin and the defendant formed a partnership to conduct a stationery business in Lynn, under the name of

Allen Stationery Co. In 1923, the plaintiff Benjamin Shulkin, who had been an employee since 1919, was admitted as a third partner. The partnership agreement was oral, and the profits and losses were to be shared equally. Benjamin and Morris Shulkin were to have the active management of the business, the defendant to be the "outside man" and Benjamin Shulkin to have charge of the store. Benjamin and Morris Shulkin (hereinafter referred to as the active partners) were to give their full time to the business and were to draw salaries, but Irving Shulkin was not. The master found that the records of the business were inadequate and confusing, and that, as a result, it was difficult to ascertain precisely what actually happened with reference to some of the transactions hereinafter referred to. Irving Shulkin, beyond selecting an accountant in 1931 to install a double entry system of bookkeeping, had nothing to do with the keeping of the firm accounts or books, and so far as appears made no examination of them. The accounting, "so far as it relates to money," is, by the plaintiffs' election, confined to the period from January, 1931, to October 29, 1936.

The trial judge denied motions to recommit to the master, and ordered that an interlocutory decree be entered confirming the master's report as modified in certain respects, and overruling the objections and exceptions to the report except in so far as they were dealt with or disposed of by the rulings and findings of the judge. Irving Shulkin and the defendant appealed from the interlocutory decree which was entered upon this order, and the defendant appealed from the denial of his motion to recommit. The final decree ordered that the partnership funds be distributed to the partners in the amounts therein specified, and from this final decree all the parties appealed. It is agreed that the mathematical computations, upon which the amounts set out in the final decree are based, are correct.

The active partners, during the accountable period, each withdrew from the business about twice the amount drawn by the other partner, and without the latter's knowledge. The master finds that, as to their withdrawals, the active

partners are "equally at fault." The judge charged each partner with the amount of his respective drawing and also charged the active partners with interest at six per cent on the amount of their drawings in excess of that of the other partner. The parties do not question the computation of these amounts of interest, which was to the date of final decree, which date, for computation purposes, was taken to be as of October 25, 1937. The judge ruled that the interest so charged should be shared equally by all the partners.

As a rule, interest is not chargeable among partners in the absence of some agreement. *Harris* v. *Carter,* 147 Mass. 313. *Winchester* v. *Glazier,* 152 Mass. 316, 325. *Lockwood* v. *Roberts,* 171 Mass. 109. But this general rule is subject to a well recognized exception that interest may be charged if, under the circumstances of the particular case, the equities so require. *Miller* v. *Lord,* 11 Pick. 11, 25, 26. *Baker* v. *Mayo,* 129 Mass. 517. *Crabtree* v. *Randall,* 133 Mass. 552. *Wiggins* v. *Brand,* 202 Mass. 141, 147. *Cole* v. *Holton,* 272 Mass. 565, 572. *Buckingham* v. *Ludlum,* 2 Stew. (N. J.) 345, 357, 358. *McCormick* v. *McCormick,* 7 Neb. 440, 446–447. *Atherton* v. *Whitcomb,* 66 Vt. 447. *Forsyth* v. *Butler,* 152 Cal. 396, 402–403. Compare *Arnold* v. *Maxwell,* 230 Mass. 441, 445; *Cochran* v. *Boston,* 211 Mass. 171; *Central Trust Co.* v. *National Biscuit Co.* 273 Mass. 319, 323. Although the partnership agreement contained no provision for withdrawals or for payment of interest in this or any other circumstance, we think that interest was properly charged with respect to the withdrawals, and that the method provided in the order for decree for its computation and distribution was equitable. Irving Shulkin relied upon the diligence and integrity of his brothers. It does not appear that he ever examined the books, and, if he had, he would have been required to search out the amounts of withdrawals recorded in the manner hereinafter stated. Although the order for decree provided that interest upon the withdrawals should be shared by all the parties equally, nevertheless, in effect, the result accomplished and incorporated in the final decree

was to allow Irving Shulkin interest upon a sum equivalent to the difference between what he had drawn and the amounts which had been drawn by the active partners. We think this is all to which Irving Shulkin was entitled, and that, under the circumstances, the active partners cannot complain.  The defendant contends that the fact that the withdrawals were recorded in the books as "Purchases" and "Cash purchases" requires the inference that there was something illegal behind these entries and that consequently the plaintiffs are not in a position to seek equitable relief.  If we assume that the purpose behind these entries was fraudulent or illegal, nevertheless the facts as to the withdrawals could be established without reference to any such purpose and the defendant takes nothing by his contention.  *Hazelton* v. *Lewis*, 267 Mass. 533, 540.  *O'Gasapian* v. *Danielson*, 284 Mass. 27, 34.

At the time of the organization of the partnership, it was agreed that Benjamin and Morris Shulkin were to draw salaries of $35 and $45 respectively each week, and Irving Shulkin then said that "they were to draw enough to get along on."  Both of the active partners were married and had families.  From the date of the partnership agreement until October, 1936, Irving Shulkin never inquired, and the active partners never told him, what they were drawing, but he assumed that they were drawing more than the sums originally agreed upon.  They increased these weekly drawings from time to time so that from October, 1932, to September, 1936, Morris Shulkin drew $80 and Benjamin Shulkin, $70.  All these salary withdrawals were accurately recorded in the account books.  Irving Shulkin contends, in view of the master's finding that the amount of salary usually paid to employees performing the duties of Morris and Benjamin Shulkin was $35 to $40 a week, although the master states that he had no means of determining whether "one of two or more proprietors of a business would usually and nominally draw more," that the decree is wrong in not charging Benjamin and Morris Shulkin with the amounts of their salaries in excess of $35 and $45 a week.  We do not think there was any error.  The right of a partner to

compensation for his services depends wholly upon agreement, express or implied. G. L. (Ter. Ed.) c. 108A, § 18 (f). *Dunlap* v. *Watson*, 124 Mass. 305, 306. *Hoag* v. *Alderman*, 184 Mass. 217, 218. *Wiggins* v. *Brand*, 202 Mass. 141, 145. The court may draw its own inferences from the subsidiary facts reported by the master. *Ryder* v. *Donovan*, 282 Mass. 551, 554. The entire facts reported warrant the conclusion that the salary rates rested upon agreement and that their amounts were not unreasonable. See *Winchester* v. *Glazier*, 152 Mass. 316, 323–324; *Hoag* v. *Alderman*, 184 Mass. 217, 218. Compare *Harris* v. *Carter*, 147 Mass. 313. There was no error in charging Benjamin Shulkin and Morris Shulkin with the salaries drawn by them respectively while on their winter vacations, but we think it was error to allow the defendant the $440 drawn by him as salary during his disability in 1935. See *Kinney* v. *Maher*, 156 Mass. 252, 254. The active partners were properly charged with the sums received by them as salaries in excess of their regular weekly salaries for the two weeks in October, 1936, and they were entitled to the credits allowed for salaries during the last two weeks of the existence of the partnership. By the terms of the final decree, interest was charged on the amounts of the salary withdrawals which were disallowed, this interest to be shared by all the partners equally. There was no reversible error. It appears that by this method the same result was arrived at as in the case of the interest charged on the amount of the partnership withdrawals.

The master found that the defendant collected and appropriated to his own use amounts paid to him on behalf of the firm. The defendant contends that this finding was not warranted, but it comes within the rule that it will not be disturbed unless it is plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. An examination of the report fails to disclose that it is wrong. The master also found that the defendant had overcharged the firm for articles which he purchased at auction sales, and also that he had converted to his own use certain articles purchased at such sales, but which were paid for by the partnership. Clearly the amounts involved in these transactions were

properly charged against the defendant. See *Wiggins* v. *Brand,* 202 Mass. 141, 146; *Costa* v. *Costa,* 222 Mass. 280, 282–283; *Lindsay* v. *Swift,* 230 Mass. 407, 412. The defendant's objection to the findings upon which these charges are based cannot be sustained for reasons already stated. In addition to the above items, the defendant was charged with certain sums, including interest, which represented profits made by him in transactions secretly conducted, and which came within the scope of the partnership business. Upon these findings these charges were proper. G. L. (Ter. Ed.) c. 108A, § 21. *Leach* v. *Leach,* 18 Pick. 68, 76. *Holmes* v. *Darling,* 213 Mass. 303, 306. The finding was warranted that the defendant could not properly engage in business which was in competition with that of the partnership. Irving Shulkin contends that the master should have found the amounts of profit on nine transactions in which the defendant engaged, and relies upon a statement by the defendant, on cross-examination, that the profit on used furniture transactions ranged from fifty to eight hundred per cent. The master construed this statement, "given in a moment of anger," to express the thought that a dealer's profit in a used furniture transaction might be anything. He reported that he was unable to find the normal percentage of profit "during the period under review in second-hand furniture dealings," and, as to each transaction in question, stated that in some instances the purchase prices were unknown and that as to all he is unable to find any profit. We think there was no reversible error.

The master also found that the defendant engaged in "some personal transactions" by way of purchases and sales, some of which were competitive with the partnership business. He states: "Upon examination of the known facts with reference to these sales even if it be assumed that the defendant was competing with his partners, which he was in some cases and not in others, I am unable except where indicated to calculate his profit in any transaction and therefore make no findings involving money liability against the defendant in respect to these sales." It was in evidence before the master that during the accountable

period a substantial part of the defendant's bank account was not specifically accounted for, and the master was asked to use this unaccountable figure as a basis upon which to compute the profit made by the defendant in his dealings in competition with the business of the partnership. The master declined to do this, and we think there was no error.

The trial judge ruled correctly that the expenses of the receivership were payable out of the partnership fund. *Hurter* v. *Larrabee,* 224 Mass. 218, 222. The trial judge's order, as embodied in the final decree, was that counsel fees and expenses of the several parties, including the expenses of an accountant employed by the plaintiffs, were not chargeable against the partnership fund nor against any of the partners individually in behalf of any one partner. "Counsel fees are awarded not as separate and distinct from costs but as a part of costs." *Boynton* v. *Tarbell,* 272 Mass. 142, 145. In suits in equity, in which no provision is expressly made by law, costs are wholly in the discretion of the court, but no greater amount shall be taxed therein than is allowed for similar charges in actions at law. G. L. (Ter. Ed.) c. 261, § 13. *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, 262, 264. *Malloy* v. *Carroll,* 287 Mass. 376, 384, and cases cited. *Chartrand* v. *Chartrand,* 295 Mass. 293, 297. *Hooper* v. *Mayo,* 298 Mass. 411, 415. We think there was no reversible error. *Barnes* v. *Springfield,* 273 Mass. 283, 286.

The plaintiffs also contend that they are entitled to counsel fees by virtue of the provisions of the uniform partnership act, G. L. (Ter. Ed.) c. 108A, § 38, wherein it is provided, among other things, that when the dissolution of a partnership is caused "in contravention of the partnership agreement," each partner, who has not caused the dissolution wrongfully, shall have the right to damages for breach of the agreement, as against each partner who has caused the dissolution wrongfully. This § 38 must be read in conjunction with § 31, which provides, in so far as here material, that "Dissolution is caused: . . . (2) In contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any

other provisions of this section, by the express will of any partner at any time." *   We are of the opinion that the provisions of § 38 are not applicable, and that the counsel fees and expenses are not recoverable as damages under its provisions.

The plaintiffs contend that the decree should have provided for the payment by the defendant of the reasonable expense of proving certain facts, the existence of which the latter had denied. G. L. (Ter. Ed.) c. 231, § 69, as amended by St. 1932, c. 177. It is provided that such expense shall be determined after summary hearing by the judge presiding at the trial, but there is nothing in the record to show that any such determination was made or that there was any suggestion, until now, that it should be made. We think it is too late to raise the question here. *Millett* v. *Temple*, 280 Mass. 543, 552; *S. C.* 285 Mass. 87. Compare *Hooper* v. *Mayo*, 298 Mass. 411, 415; *Friedman* v. *S. S. Kresge Co.* 290 Mass. 114, 117.

It is the contention of Irving Shulkin that the active partners, to the extent that both or either acted with infidelity toward the partnership, should, as already stated, be required to return the salaries drawn by them and should not be permitted to share in any of the profits made as a result of any wrongdoing, or in the value of the good will of the partnership. There is nothing in the record to disclose that, when the assets were sold by the receiver, there was any attempt made to segregate any item to good will, but it is contended by Irving Shulkin that, by reason of certain figures as to values and profits which were before the master, it is possible to allocate a certain part of the sum received by the receiver to the item of good will. The master did not do this and the trial judge declined to follow the suggestion of Irving Shulkin. We think he was right.

The main question, however, remains whether the active partners or either of them should be permitted to share in the items hereinbefore referred to. It is settled that, where

---

* The master found: "The term of the partnership was at will." — REPORTER.

a partner has wrongfully appropriated partnership property, or has made secret profits either in his dealings with the partnership funds or in transactions which properly come within the scope of the partnership business, or has acquired a share in fraud of his partners, he must account for the results to the partnership in order that his copartners may share therein. *Leach* v. *Leach*, 18 Pick. 68. *Jones* v. *Dexter*, 130 Mass. 380. *Holmes* v. *Darling*, 213 Mass. 303. *Shelley* v. *Smith*, 271 Mass. 106. G. L. (Ter. Ed.) c. 108A, § 21. Irving Shulkin's contention, if followed, would deprive the wrong-doing partner of any participation in the fruits of his wrongful actions. The cases which he cites, however, in the main deal with the situation where a trustee, as distinguished from a partner, has made a profit by dealing with the trust property. Clearly in such a case the whole of such profit belongs to the principal of the trust. See *Ball* v. *Hopkins*, 268 Mass. 260. The same is true in the case of an agent who makes a secret profit as a result of a purchase by him on behalf of his principal. See *Raymond* v. *Davies*, 293 Mass. 117. But we do not understand that this is the rule in the case where a partner is a wrongdoer. The principle deduced from the cases which deal with such a situation seems to be that the innocent partner is to be put as nearly as possible in the same position which he would have occupied if there had been no wrongdoing, and that this result is accomplished by giving to him that portion of the property converted or of the secret profit, to which he would have been entitled had the property converted been allowed to remain with the partnership until its dissolution or distribution, or had the secret profit been earned by the partnership in the usual course of its business. See *Leach* v. *Leach*, 18 Pick. 68, 76; *Harvey* v. *Varney*, 104 Mass. 436; *Emery* v. *Parrott*, 107 Mass. 95, 100; *Jones* v. *Dexter*, 130 Mass. 380, 383; *Wiggins* v. *Brand*, 202 Mass. 141, 146; *Holmes* v. *Darling*, 213 Mass. 303, 305–306; *Arnold* v. *Maxwell*, 223 Mass. 47, 49–50; *Lindsay* v. *Swift*, 230 Mass. 407, 412; *Steele* v. *Estabrook*, 232 Mass. 432, 440–441; *Shelley* v. *Smith*, 271 Mass. 106.

It is true, as Irving Shulkin contends, that an agent or

other fiduciary who is unfaithful to his trust may be denied compensation. *Little* v. *Phipps,* 208 Mass. 331, 333–334. *Rolikatis* v. *Lovett,* 213 Mass. 545, 548–549. *Robertson* v. *Hirsh,* 276 Mass. 452, 453. *Raymond* v. *Davies,* 293 Mass. 117, 119. But this rule is not an absolute one and the question whether a fiduciary who has not been entirely faithful will be denied compensation to which he would otherwise be entitled ultimately rests in the discretion of the court. *Jennison* v. *Hapgood,* 10 Pick. 77, 112. *Brooks* v. *Jackson,* 125 Mass. 307, 311. *White* v. *Ditson,* 140 Mass. 351, 362. *Rowland* v. *Maddock,* 183 Mass. 360, 364. Am. Law Inst. Restatement: Trusts, § 243. The judge, on the report, declined to charge the active partners with the salaries which they drew, except as hereinbefore stated, and we think there was no error in this. When Benjamin Shulkin was admitted to the partnership in 1923, he paid $4,000, presumably for a third interest in the partnership. During the accountable period Irving Shulkin withdrew $8,000 from the partnership and, by the terms of the accounting, is entitled to upwards of $20,000 more. If we may assume that the value of his investment in the partnership in 1923 was $4,000 (his original investment was less than $1,000), even without knowing what withdrawals were made in the years between 1923 and 1931, it seems apparent, from the record, that the services of the active partners were of real value, and resulted in handsome returns on the investment of their brother, who, except for conferences and furnishing merchandise at cost, left the management of the business entirely to them.

The decree provides that, wherever interest is allowed, it is to be computed to the arbitrary date of October 25, 1937, which, as already stated, for purposes of computation was to be taken as the date of the entry of final decree, the date of which, in fact, was January 17, 1938. The parties have variously argued that interest should run only to the time of the appointment of the receiver; and, on the other hand, that it should be computed to the date of the filing of the bill and added to the amounts found due, with interest then figured upon the total so found. Com-

pound interest may be allowed in equity in the discretion of the judge, depending upon the degree of misconduct involved in the case. *Jennison* v. *Hapgood*, 10 Pick. 77, 104. *Boynton* v. *Dyer*, 18 Pick. 1, 6–7. *Forbes* v. *Ware*, 172 Mass. 306, 310. *Arnold* v. *Maxwell*, 230 Mass. 441, 445. *Ellis* v. *Sullivan*, 241 Mass. 60, 64. The judge may look at the circumstances of the case to determine whether compound interest should be allowed. *Harvey* v. *Varney*, 104 Mass. 436, 445. *Forbes* v. *Ware*, 172 Mass. 306, 309–310. We see no occasion to disturb the decision of the trial judge in this matter. See *Wiggins* v. *Brand*, 202 Mass. 141, 147; *Arnold* v. *Maxwell*, 223 Mass. 47, 54; *S. C.* 230 Mass. 441, 445; *Hawkes* v. *Lackey*, 207 Mass. 424, 434. Compare *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 174. The defendant contends that interest, where allowed, should not run after the date of the appointment of the receiver, and makes the point that the situation is analogous to the claim of creditors against the estate in the hands of a court receiver. We do not agree with this if interest is allowable. We think it was proper for the trial judge to order that it be computed to the date when the innocent party would be in the position to receive what was due him.

The defendant's exception to the failure of the master to make certain rulings of law cannot be sustained. It would seem from the report that the requests were not presented until the defendant brought in his objections to the report, and there is nothing in the report to indicate that the master did not act upon the principles embodied in the requests for rulings, in so far as they correctly state the law and were applicable to his duty as master. *First National Bank of Haverhill* v. *Harrison*, 271 Mass. 258, 263.

The motion to recommit the master's report was addressed to the sound discretion of the judge, which does not appear to have been exercised improperly. *Rosenberg* v. *Garfinkel*, 294 Mass. 196, 199. We have examined all the points argued. The decree should be modified by charging the defendant with $440, which sum represents the amount

drawn by him as salary during the period of his disability. Computation of interest should be made to the date of the final decree. The decree should also contain an order for a dissolution of the partnership. *Wiggins* v. *Brand*, 202 Mass. 141, 147. As so modified the decree is affirmed.

*Ordered accordingly.*