Leo JOSEFSBERG
v.
FRICKE & SON, INC.
Civ. A. No. 57-317.

United States District Court
D. Massachusetts.
April 13, 1959.

Isadore H. Y. Muchnick, Boston, Mass., for plaintiff.

Isadore A. Solomon, Leominster, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

This is an action by a New York resident against a Massachusetts corporation to recover, under a written contract, commissions allegedly due on sales of defendant's products.

Defendant was a small corporation engaged in the manufacture of dies and

molds for use in the fabrication of plastic products. It was owned by Gustave Fricke and his son Richard. Previous to 1949 they had done business with plaintiff Josefsberg in connection with sales to the Federal Knife Company, in which Josefsberg owned a one-third interest.

The contract relied upon is in the form of a letter drawn up by Josefsberg following a meeting between Josefsberg and the Frickes and signed by Gustave Fricke. The letter reads as follows:

"October 1st, 1949.
"Fricke & Son,
"195 Hamilton St.
"Leominster, Mass.
"Leo Josefsberg,
"Curtig Co.
"2 E. 46 St.
"New York, N. Y.
"Gentlemen:

"We hereby appoint you as our representatives in the United States and promise you 10% commission on all molds and Dies which we will sell and make and build for any and all customers.

"You are to be our representatives for a period of five years from above date and we authorize you to travel for us and to advertise and correspond for us with any and all customers.

"It is, of course, understood, that you will not quote prices without our consent and that you will not promise deliveries without consulting us first.

"Good luck to you and let us have some nice business.

"Very truly yours,
"s/ Gustave Fricke
"Gus Fricke, Pres.
"Witnessed:
"s/ Richard F. Fricke
"Richard Fricke, Treas."

The Curtig Company named in the letter was in fact a partnership consisting of Josefsberg and Kurt M. Gluck and was represented by Josefsberg to the Frickes as being one of the companies through which he did business.

The Curtig Company sent out several hundred letters to the plastic trade, on defendant's letterhead, soliciting business. Numerous inquiries were received but no sales were ever made as a result of these letters. A meeting was also arranged by Curtig which resulted in an order for molds in the amount of $3,260 from Banner Plastics Corporation. Plaintiff individually does not seem to have played any substantial part in effecting this sale.

██ During the five-year period of the contract plaintiff secured orders for the defendant for molds from Federal Knife Company, in which he owned a 33⅓% interest, from Alglobe Trading Corp., in which he owned a 10% interest, and from Dale Products Company, in which he owned a 50% interest. Defendant knew that Josefsberg had an ownership interest in Federal and Alglobe, but not that he had one in Dale. He told the Frickes that Dale was owned by friends of his. There was no evidence that any of these three companies knew that plaintiff was a sales representative of defendant; in fact he asked the Frickes to keep silent about the contract because he did not want his friends and associates in these companies to know he was getting a commission from defendant. Plaintiff in these transactions was acting as agent both for the defendant and for these companies. His own testimony was that in these transactions his procedure was to find a customer for some plastic article to be manufactured by or for one of these companies, and then having obtained that business, to arrange for them to buy the necessary molds from defendant. Plaintiff was thus trying to serve two masters. There was a genuine conflict between his duty to obtain molds for these companies at the lowest possible price and his duty to sell molds for defendant at the best possible price. Where an agent in these circumstances acts for both parties to the transaction he can recover a commis-

sion from neither unless this double relationship was known and assented to by each of them, even though no actual harm has been suffered by the principals as a result of the double agency and even though there was no fraud or bad faith on the part of the agent. Sullivan v. Tufts, 203 Mass. 155, 89 N.E. 239; Quinn v. Burton, 195 Mass. 277, 81 N.E. 257.

Plasticraft Co. was a Massachusetts corporation organized in 1951 in which the Frickes owned one-half the stock and the other half, standing in the names of Kurt M. Gluck and Harry Josefsberg, was owned by plaintiff. The company was engaged in the manufacture of plastic articles, chiefly for companies such as Dale and Alglobe in which plaintiff had an interest. Plaintiff urged the Frickes to agree to low prices on the molds manufactured for these companies with the argument that he would obtain for Plasticraft Co. profitable contracts for fabricating the plastic items. Plaintiff did arrange contracts, fixing the prices to be charged by Plasticraft. Plasticraft's operations were consistently conducted at a loss.

In particular plaintiff persuaded defendant to agree to a price of $10,000 for a mold for use in the manufacture of sunglasses by Dale. Defendant's original price for this mold was $14,000 and the $10,000 price represented a sale of the mold at a loss. Plasticraft was given the contract to make the glasses at a price figured by plaintiff. The Frickes, disturbed over the failure of Plasticraft's business to show any profit, hired one Cormier as an accountant and adviser. He informed them that the prices fixed by Josefsberg for the articles being made by Plasticraft were so low that they were being sold at less than what it cost the company to make them. In April 1953 Richard Fricke told plaintiff what Cormier had said. Plaintiff, who up to this time had made no demand for any commission, then told Fricke that if they did not discharge Cormier he would demand his commissions under the contract. From that time on he made repeated demands for payment.

Any efforts made by plaintiff as agent of defendant were parts of larger transactions carried on by plaintiff for the ultimate benefit of himself or companies in which he had a financial interest. Instead of trying to get the best possible price for defendant, he persuaded defendant to reduce its prices to a point where it could make no profit and even operated at a loss. He then thwarted the Frickes' hopes of recouping their losses on defendant corporation from their share of the profits from Plasticraft by fixing prices so that Plasticraft lost money too. Any profit on these transactions as a whole would thus flow only to companies in which plaintiff had a personal financial interest. This is a clear case of the complete violation by an agent of the fiduciary duty of loyalty which he owes to his principal, a violation so complete that plaintiff's claim to any compensation should be denied. Shulkin v. Shulkin, 301 Mass. 184, 193–194, 16 N.E.2d 644, 118 A.L.R. 629; Raymond v. Davies, 293 Mass. 117, 119, 199 N.E. 321, 102 A.L.R. 1112; Little v. Phipps, 208 Mass. 331, 333–334, 94 N.E. 260, 34 L.R.A.,N.S., 1046.

Plaintiff asks leave to amend his complaint, which asks commissions only on sales made by him, to conform to the provision of the contract for commissions on all molds and dies. Defendant contends that this provision of the contract was modified by a later oral agreement. In view of the holding that plaintiff is entitled to no recovery, it is not necessary to pass on these issues which would affect only the amount of the recovery if plaintiff had prevailed.

Judgment will be entered for defendant.