HARRY C. WIGGINS *vs.* FREDERICK J. BRAND.

Suffolk.    January 26, 1909. — May 21, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Partnership*, Accounting between partners, Dissolution.    *Interest.    Equity Pleading and Practice*, Decree.

Where a partnership has sold all its business excepting its bills receivable, but the partnership has not been dissolved, and one of the partners voluntarily takes upon himself the duty of liquidation without there having been any express agreement between the partners that he should be paid for his services, no allowance for his time and services in the liquidation should be given to him in his final accounting with his partner.

Where two partners sell all the partnership business except the bills receivable and the purchaser does not assume active control immediately, but one of the partners, who voluntarily had taken upon himself the liquidation of the partnership affairs, the partnership not having been dissolved, acts as manager for the purchaser and continues to carry on the business under the partnership name and to use the funds of the partnership for that purpose, and in so doing the purchaser becomes indebted to the partnership in a certain amount, the liquidating partner may be held accountable to his partner for such partner's proportional share of the amount of such debt of the purchaser.

Where one of two partners voluntarily has assumed the duty of liquidating its affairs, in stating his account with his partner on dissolution of the partnership, he must show that all money which he has received on behalf of the firm either is available for distribution or has been disbursed lawfully, and, if he does not explain an expenditure or show that his partner assented to its having been charged to the profit and loss account, he properly may be held to owe his partner one half of the amount of such expenditure.

In a suit in equity between two partners for an accounting, it appeared that the defendant voluntarily had taken upon himself the duty of liquidating the affairs of the partnership, that three and a half years was a reasonable time for the complete performance of that duty, and that after that time the defendant used the firm funds for his own purposes. *Held,* that it was proper to charge the de-

fendant with interest on the principal sum which was found due to the plaintiff from the time when the defendant should fully have performed his duties.

Where in a suit in equity between partners who had been associated together by oral agreement with no definite time stated for termination of the partnership, a final decree has been entered, overruling the defendant's exceptions to a report of a master stating the account but failing to decree a dissolution, and the defendant has appealed, it is proper for this court to direct that the decree be so modified as to include an order for a dissolution, and that, so modified, it be affirmed.

BILL IN EQUITY, filed in the Superior Court for the county of Suffolk on December 8, 1904, alleging that the plaintiff and the defendant had been partners, that the business of the partnership had been sold and that thereafter the defendant had had charge of the liquidating of the firm accounts, and on account of such liquidation owed certain sums to the plaintiff; and praying that the defendant be ordered to account with the plaintiff, and " that the defendant be required to immediately wind up the affairs of the company, dissolve the same in due form, and pay over to the plaintiff the amount found due on said accounting," and for general relief.

The case was referred to Wellington Wells, Esquire, as master. In his report, beside the facts stated in the opinion, he found in substance the following:

Previous to January 1, 1899, the plaintiff and the defendant had been engaged in business as partners under the firm name of the Boston Felting Company. There was an accounting between them in December, 1895. On January 1, 1899, they sold out the partnership business to the American Felt Company, but reserved to themselves the accounts receivable and assumed bills payable up to that time. After the business was sold out, the plaintiff and the defendant were both employed by the American Felt Company.

The defendant's continued relations to the partnership are stated by the master in the following terms: " I find upon all the evidence that the defendant was the liquidating partner of the business of the Boston Felting Company; that there was no express agreement at the time the partnership was formed, or subsequent thereto, that the defendant should receive compensation for his services in settling the affairs of the partnership; that the defendant rendered these services with the knowledge

and consent of the plaintiff, and that these services were equally beneficial to the plaintiff and the defendant." Consequently, the master disallowed a claim of the defendant for $1,787.63 for his own time and personal services in litigation relating to a claim of $13,000 of the partnership against a debtor whose property was in the hands of a receiver. He also found that the value of such time and services was $600.

The facts with regard to the claim against the American Felt Company are stated in the opinion.

The master also found: " An item for $1,229.05 on the exchange account, I find was charged off to profit and loss by the bookkeeper at the direction of the defendant while she was working on the new account. By this account it appeared that a check of the firm had been drawn, payable to one Hattie I. Babcock, for the sum of $1,250 and dated June 10, 1899. This check was not produced in evidence, and I find it has been destroyed. The defendant testified that all the checks of the partnership were destroyed some time shortly after the business was sold out to the American Felt Company. The plaintiff testified that he had never destroyed any of the checks or authorized their destruction by any one else, or had known of their destruction until the hearing of this case. I find that the stub in the check-book corresponding to the number of the destroyed check bore this entry in the handwriting of . . . the bookkeeper, ' $1,250.00 June 10th, 1899, Hattie I. Babcock Exchange for cash $1,250.00.' No evidence was introduced in regard to the indorsements on said check. I find that the defendant almost invariably signed the firm check, except on one occasion when the plaintiff signed the firm's check payable to one Woodruff; that when the defendant was to be out of town he generally left some firm checks signed in blank which were later filled out, as occasion required, by the bookkeeper, and sometimes under the direction of the plaintiff if he was in the office. The bookkeepers testified that they had no recollection of this check or the circumstance under which it was given.

" I find that the defendant was the attorney in fact for the executors under the will of one Chapin which was probated in Florida. Under the provisions of this will, one Clarissa Babcock, who was the sister of the testator, was the beneficiary for

life of the income of a quarter of the estate, with the remainder over to one Hattie Babcock, who was her daughter. The defendant testified that he did not recall any Hattie I. Babcock. The books of the firm on the personal account of the defendant showed that on June 10, 1899, he paid to one Hattie I. Babcock the sum of $31.25.

"I find that the defendant swore to an account of the said estate as of June, 1898, which account shows a distribution of $1,250 to one Clara Babcock who I find from the evidence was the same person as the Clarissa Babcock named in the will.

"After the plaintiff had introduced evidence of the probating of said estate, the defendant testified that he inquired at home after giving his previous testimony, and his wife informed him that she had a relative by the name of Hattie I. Babcock who was a niece of the testator named in said will, and he then testified that this information did not refresh his recollection in any way in regard to the $1,250 check.

"The plaintiff testified that he never knew a Hattie I. Babcock and had no knowledge of this check until he heard the evidence at this trial.

"I find that . . . in June, 1899, the Boston Felting Company was doing no business except on account of the American Felt Company. The account of the Boston Felting Company with the American Felt Company was closed in March, 1900.

"I find that the pass book of the said partnership showed no deposit of cash of the amount of $1,250 or of any sum nearly as large during the period of several weeks after the date of said check. I find that the firm had exchanged their checks for cash during that time and that some of them were for sums nearly as large, but that almost all of these, and particularly the large ones, were for customers. I find that the firm had no customer by the name of Hattie I. Babcock. I find it was the custom of the bookkeepers to put the cash into the drawer and pay with it any bills which were presented, and that it might be some days after the cash was received before a deposit of what remained of it was made. The bookkeepers further testified that when they paid bills from cash out of the drawer, they made slips showing the transaction, which slips were copied into an account

and sent monthly to the New York office of the American Felt
Company and that the slips were then destroyed. None of these
slips of the books of the American Felt Company were pro-
duced at the hearing, though demand to produce them was made
by the plaintiff upon the defendant.

"I find that about the date of this check the Boston Felting
Company was not contracting indebtedness or paying bills there-
for on its own account in cash. . . .

"Upon all the evidence I find that there was no agreement
between the plaintiff and defendant that this balance should be
charged off to profit and loss; I find that the defendant has not
satisfactorily accounted for said sum, and I rule that the defend-
ant, as liquidating partner, is chargeable to the plaintiff for the
latter's share thereof."

The substance of the defendant's exceptions sufficiently ap-
pears in the opinion. There was a hearing upon the exceptions
before *Fox,* J., who overruled them and decreed that the master's
report be confirmed and that the sum therein found to be due to
the plaintiff be paid to him by the defendant. There was no
decree for a dissolution. The defendant appealed.

*C. E. Allen,* for the defendant.

*C. S. Wing,* for the plaintiff.

BRALEY, J. The plaintiff having obtained a decree, the case
is before us on the defendant's exceptions to the master's report,
which may be dealt with in the order of presentation.

Upon the sale of the firm's business to the American Felt
Company, no assets remained except the bills receivable, which
the defendant took over to collect for the purpose of closing its
affairs, accounting, however, to the plaintiff for his share. The
partnership, while it had ceased to do business, not having been
dissolved, it was the duty of each partner for their mutual benefit
to aid in the settlement without compensation. *Dunlap* v. *Wat-
son,* 124 Mass. 303. The defendant, moreover, having taken
upon himself the duty of liquidation, and there having been no
express agreement that he should be paid, must be held to have
contributed his services, even if they may have been more oner-
ous because of the litigation which arose in the collection of the
outstanding debts. Nor did the plaintiff's request, that he close
the accounts and attend to the lawsuits, subject the defendant

to any greater burden than he had assumed already voluntarily, or take the case out of the usual rule. *Schenkl* v. *Dana*, 118 Mass. 236. *Dunlap* v. *Watson, ubi supra.* The master's disallowance of the defendant's claim for extra compensation, and charging him with one half of the sum he had retained for personal services and for time spent in attending lawsuits and winding up the business was right.

It appears that for some time after the sale the American Felt Company did not assume active control, and the defendant, who acted as agent and manager for the vendee, continued the business in the name of the partnership, but for the account of the company. Upon adjustment of this account, there remained a balance due from the company to the firm, which the defendant directed should be charged off to profit and loss. The evidence is not reported, but, having determined that the defendant failed to account satisfactorily for this amount, the master accordingly held him liable for the plaintiff's share. If as liquidating partner he chose to use the firm's name and ostensibly the firm's money in carrying on business for the convenience of the succeeding company in which he alone was interested, and the books of the firm, kept either by him or under his direction, disclosed an outstanding indebtedness as the result of the transactions, due from a debtor apparently solvent, the business done was the business of the firm for which the defendant was properly held to be accountable to the plaintiff. *Topliff* v. *Jackson*, 12 Gray, 565. *Jones* v. *Dexter*, 130 Mass. 380. *Moore* v. *Rawson*, 185 Mass. 264, 275. *Brown's appeal*, 89 Penn. St. 139.

In stating the account, the defendant was required to show that the money received either was available for distribution or had been lawfully disbursed. The report states that nearly six months after the sale a check in the name of the firm had been drawn by him covering the amount of the last disputed item in the exceptions. Having ascertained that the firm, even if doing business on account of the company, had no customer bearing the name of the payee, and that the defendant failed to explain the entry or to show that the plaintiff ever had assented to crediting the profit and loss account with the face of the check, he rightly allowed the plaintiff his share of the unauthorized payment. Indeed it would not be an unwarranted inference from

the facts recited, that the defendant used this money for the payment of his private debts.

But if the exceptions to the master's statement of the account, therefore, are not tenable, a final exception is urged to his allowance of interest on the balance due from July 1, 1903. If generally in the settlement of a partnership account where no provision is found in the articles of agreement as to interest, interest does not begin to run until dissolution or a demand on the liquidating partner for an accounting, in this case the master expressly finds that the defendant " has used for his own purpose the share of the assets of the copartnership to which the plaintiff was entitled." In connection with this finding he also reached the conclusion that the period of three and a half years elapsing between the sale and July 1, 1903, afforded a reasonable time within which to adjust its affairs and pay over the money. It furthermore being plain from the entire report that the defendant after that date enjoyed the use of the plaintiff's share for his own benefit, although the plaintiff previously had asked for a settlement and was finally obliged to bring suit, the exception to the allowance of interest also fails. *Dunlap* v. *Watson, ubi supra. Moore* v. *Rawson, ubi supra.*

But, while the decree of the Superior Court correctly overruled the exceptions and confirmed the report, it contains no order for a dissolution. If before bringing suit no formal notice to dissolve was given, yet, there having been no definite agreement in the oral contract as to the time that it was to continue, the partnership should be treated as being strictly at will and as dissolved from the date of the filing of the bill. *Fletcher* v. *Reed*, 131 Mass. 312. *Mellersh* v. *Keen*, 27 Beav. 236. A final decree upon an accounting between partners, where the partnership has ceased to do business and is to be wound up, ordinarily is not entered except upon a dissolution. Under the prayer for general relief, the decree should include such an order, and when so modified it is affirmed. *English* v. *Foxall*, 2 Pet. 595, 612.

*Ordered accordingly.*