AMERICAN SECURITY COMPANY, APPELLANT, v. BARKER COMPANY, APPELLEE.

FILED MAY 17, 1918. Nos. 20079, 20166.

1. **Contract: JOINT ENTERPRISE.** A contract by which the parties thereto agree to purchase real estate in the name of one of the parties who shall furnish the money with which to purchase and improve the same, and also agree to sell the property within a

specified time and divide the net profits equally between the parties, after applying rents received and so much of the proceeds of sale as may be necessary in repayment of the money so advanced for the purchase thereof and an agreed rate of interest thereon, is analogous to a conveyance of title to secure the payment of money.

2. ——: ——: RELIEF. In such case, if the contract fixes a definite time for the sale of the property and termination of the contract, and the property is not sold accordingly, either party may obtain sale of the property and division of the proceeds in accordance with the terms of their contract by proceedings in equity.

3. ——: ——: RIGHTS OF PARTIES. In such case, the expiration of the time so limited without such sale of the property will not of itself terminate all interest of either party in the property.

4. ——: ——: ——. If the contract provides that one of the parties shall have the care of the property and collect the rents, and after the time provided for the termination of the contract the other party, who under the contract furnished the money to purchase the property, takes possession thereof and collects the rents and applies the same in satisfaction of the amount so advanced by him, his position becomes analogous to that of a mortgagee in possession, and a court of equity in determining the rights of the parties will not allow him a commission for caring for the property and collecting the rents, unless it is so expressly agreed in the contract.

5. ——: ——: EXPENSES. If he so takes possession thereof, and, without the knowledge or consent of the other party, donates money to induce the construction of a building on the same street and near the property so held by him, he will be held to have donated the money for public benefit or to increase his own profits, and not in behalf of the other party to the contract; and such donation will not be allowed as an item of expense chargeable against the property under a clause in the contract that "such improvements as may be agreed upon" shall be made and "charged as a part of the cost of said property."

6. ——: ——: INTEREST. The agreement in the contract that interest shall be allowed on the moneys so advanced for the purchase and improvement of the property until such time specified for the sale of the property and termination of the contract requires the allowance of such interest until the property is sold, either by agreement of the parties or decree of the court.

7. ——: ——: ——. In determining the interest accrued for the money so advanced for purchase and improvement of the property, the rule of partial payments should be applied.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed with directions.*

*James H. Adams* and *Byron G. Burbank,* for appellant.

*W. J. Connell, contra.*

SEDGWICK, J.

In this action in equity in the district court for Douglas county, the plaintiff claimed an interest in a piece of real estate in Omaha. The defendant denied that the plaintiff had any interest in the property, and the court found in favor of the plaintiff, and found the interests of the respective parties in the property, and entered a decree that the property be sold and the proceeds disposed of in accordance with the findings of the court. From this decree each party took an independent appeal to this court, and upon motion the two appeals were consolidated and heard together.

The defendant contends that the evidence does not support the findings and decree that the plaintiff has an interest in this property, and the plaintiff contends that the decree gives the defendant a larger interest in the property than the evidence will justify. The plaintiff formerly transacted business in the name of Shimer & Chase Company, and the transactions which are involved in this action were entered into by Shimer & Chase Company with the defendant. The plaintiff, in its former name, entered into a written contract with the defendant, which was in evidence upon the trial, and there seems to be little if any controversy as to the facts which resulted in this litigation. In 1908 the plaintiff, by contract with the then owners of the property, had an option to purchase the property at a specified price, and then made the contract with the defendant under which the defendant furnished the money and the property was purchased. The title, for convenience, was taken in the name of the wife of the president of the plaintiff company, and by her conveyed

to the defendant. The principal question in the case arises from the construction of this contract between the plaintiff and defendant. It seems to have been carefully prepared and provides at great length for the details of their agreement. It is contended by the plaintiff that this contract gave the plaintiff an interest in the real estate. The defendant contends that "the contract, as shown on its face, is one of agency and compensation of agent, and not for an interest in the property or a lien upon the property." The contract recites:

"Said party of the second part (this plaintiff) has an option on property described herein, the title to which, as a matter of convenience, has been executed in the name of Mabel V. Shimer. It is agreed by and between the said parties as follows, to wit: First. The party of the first part (this defendant) has this day taken up said option and purchased said property described as follows: (Description)—paying therefor twelve thousand eight hundred ($12,800) dollars, which is the net cost of said property to said second party. Second. The title to said property is taken in the name of the Barker Company, to be held by said Barker Company for the objects and purposes herein named. The said first party to furnish such additional sums of money from time to time as may be needed to carry said property and for making such improvements as may be agreed upon, and such sums so advanced shall be charged as a part of the cost of said property. * * * All the rentals or incomes that may be received from said property shall be applied first to the payment of taxes, insurance and repairs and other necessary expenses incurred on said property, and the balance of said income, if any, after paying such expenses, shall be paid to the Barker Company to apply first in payment of interest, and second in payment of the principal sum or sums of money invested under this contract. When sale of said property has been made and a final account is had under this agreement, the proceeds re-

ceived shall be applied first to the repayment to said Barker Company of all sums advanced by said first party under this contract in buying and improving and in carrying said property, and the net profits derived from said property, after repaying all of such sums advanced by first party, are to be equally divided between the two parties hereto as follows: One-half to first party for furnishing money, and one-half to second party for their option on said property, for services rendered and to be performed in connection with said property until it is sold, including superintending building, renting and collecting rent and selling, in whole or in part. * * * The price at which said property is to be sold shall be agreed upon between the parties hereto. The parties hereto agree to sell said property, and the first party agrees to execute proper conveyance to purchaser, whenever second party secures a purchaser ready, able and willing to buy within the limits of time of this contract, but first party reserves the right to retain the property at the price offered by such proposed purchaser, and thereby becomes the sole, absolute and exclusive owner thereof, and the amount of the purchase price shall be disposed of, divided, or appropriated, as herein provided, and in the event of first party becoming the owner thereof, its title shall be deemed absolute upon the disposition of, division or appropriation of the price thereof in the manner and according to the provisions of this contract."

These provisions of the contract by themselves would of course be construed to reserve to the plaintiff a substantial interest in the property itself. It provides in express terms that the title is taken in defendant's name to be held "for the objects and purposes herein named;" that when sale of the property is made "the net profits derived from said property, after repaying all of such sums advanced by first party, are to be equally divided between the two parties hereto as follows:" One-half to each party. That "the price at which said property is to be sold shall be agreed upon

between the parties hereto." It then provides that under certain conditions the defendant can purchase the property, "and thereby becomes the sole, absolute and exclusive owner thereof, and the amount of the purchase price shall be disposed of, divided, or appropriated, as herein provided;" and that defendant's title shall become *absolute* "upon the disposition of, division or appropriation of the price thereof in the manner and according to the provisions of this contract."

The contract also provided: "Said second party is to act as exclusive agent for said property, giving such time as may be necessary in looking after same, using its best efforts to dispose of the same to the best possible advantage, keep accurate accounts of receipts and disbursements, and render statements of same and strictly account for any income to first party as first party may desire."

The defendant contends that this provision indicates that the contract was simply one of agency, and is inconsistent with the idea that the plaintiff reserved a substantial interest in the property, but this provision does not purport to make the plaintiff the agent for the defendant, but rather the "agent for such property," and as such it was, so far as this provision is concerned, acting for both itself and the defendant.

The contract also provided: "It is hereby agreed and understood that the above described property shall be sold and this contract terminated on or before February 1, 1908."

The defendant contends that as the contract, by agreement, terminated February 1, 1908, the interest and right of the plaintiff in the property was canceled thereby. No doubt either party could under this provision insist that the property should be *sold* and the proceeds distributed and this terminate the contract. This is what the trial court decreed. But the defendant had no greater interest or title in the property than in the ordinary case in which a creditor takes and holds the title to real estate to secure payment of certain

sums and performance of certain conditions.   If such contract provided in express terms that failure to make such payment or perform such conditions should work a forfeiture, or, in other words, terminate of itself all interest of the plaintiff in the property, the rule in this state is that the rights of the parties can only be determined by a court of equity, and that there must be an opportunity to redeem after the equities have been determined and fixed by the court.   And, so, in this case the interest of neither party was terminated and canceled by the fact that no purchaser was found and the property sold within the time limited by the contract.

The plaintiff contends that whether this be construed a partnership or a joint ownership, interest on the money advanced by defendant should be allowed only to the time the "contract expired," February 1, 1908. The court allowed interest to the time the property is sold under the decree.   We have considered that there was and still is a joint ownership of the property as above stated.   The plaintiff by express agreement guaranteed to the defendant "interest on the said sum or sums invested under this contract at the rate of ten (10%) per cent. per annum, and should one-half of the profits not be sufficient to pay said first party interest at the rate of ten (10%) per cent. per annum, then said first party shall receive at the rate of ten (10%) per cent. on the money advanced under this contract before said second party shall be entitled to any part of said profits, and should all of the profits not be sufficient to pay said first party at the rate of ten (10%) per cent. on such money advanced under this contract, then said second party hereto hereby agrees to pay to said first party said interest at the rate of ten (10%) per cent. per annum on the 1st day of February, 1908."   Soon after February, 1908, the defendant took possession of the property and has since collected the rents, and, as neither party took any action to have their equities determined, the position of the defendant became analogous to that of a mortgagee in possession.   The rate

of interest expressly agreed upon would continue until the equities of the parties were determined and the property sold. The trial court found: "In determining the amount of interest due the defendant for the moneys advanced by it for paying for the ground and improvements thereon, as found in paragraph 1 hereof, the rule of partial payments should be applied, which is, that whenever the net amount of rents received shall equal or exceed the interest then due, then the net amount of rents shall be deducted from the amount of the principal and interest then due. The court further finds that at no time did the net amount of rents in the hands of the defendant, after paying the expenses of carrying said property, as herein found, equal the interest at 10 per cent. per annum, allowed the defendant on the money it had invested in said property, as shown by the statement of account in paragraph 1 hereof, and that, by reason thereof, the defendant is not chargeable with 10 per cent. interest per annum, or any interest on the several amounts of net rents which it collected and which the court finds the defendant then and there appropriated to its own use and benefit, as the court finds the defendant was entitled to do." The trial court was therefore right in its computation of interest.

It appears that as late as December, 1915, the defendant donated to the Omaha Grain Exchange $500, which the trial court found was "for the purpose of aiding in inducing it to locate its seven-story brick, stone, and iron building on the land immediately across the street and south of the land in this controversy, and that the defendant made said gift without the consent, knowledge, or approval of the plaintiff, and that said gift was a reasonable one and should be allowed the defendant as an item of expense to be charged against the property described in the petition." The contract provided that the defendant should "furnish such additional sums of money from time to time as may be needed to carry said property and for making such improve-

ments as may be agreed upon, and such sums so advanced shall be charged as a part of the cost of said property." The relation of the defendant to the property was at that time analogous to that of a mortgagee in possession. This donation was not "agreed upon;" the plaintiff was not consulted in regard to it, and under such circumstances the defendant must be held to have donated this money to increase its own profits, and not in behalf of plaintiff. The decree should be modified in that respect.

The contract provided that the plaintiff as his contribution towards the undertaking, and for his interest in the property under the contract, should procure the title under his option to be conveyed to the defendant, and should give "such time as may be necessary in looking after same (the property purchased), using its best efforts to dispose of the same to the best possible advantage, keep accurate accounts of receipts and disbursements, and render statements of same and strictly account for any income to first party as first party may desire;" and that the net profits of the undertaking should go "one-half to second party for their option on said property, for services rendered and to be performed in connection with said property until it is sold, including superintending building, renting and collecting rent and selling, in whole or in part." Thus, the necessary expense of "collecting said rents and caring for said property" was fully provided for as part of the consideration for entering into the contract. But the trial court found that "on or about the 11th day of February, 1908, the defendant notified the plaintiff that it would thereafter collect all rents from the property in controversy and take charge of said property and that the plaintiff objected to said action by the defendant. The court finds that the total amount of gross rents collected by the defendant from the 27th day of November, 1907, to the 10th day of March, 1917, inclusive, is $57,147.88, and that a reasonable compensation for collecting said rents and caring

for said property during said period is 5 per cent. on the gross amount of said rents collected, which is $2,857.39, and the same is allowed the defendant as a part of the expense of said property." There is no finding, nor, so far as we have observed, any evidence, of any failure or neglect or misconduct of plaintiff in performing the duties thus put upon it under the contract. Plaintiff "objected to said action by defendant." Under such circumstances, a mortgagee who takes possession of the property after default would only be allowed for necessary expenditures if made in the care of the property, and not for personal services, and by analogy we cannot see why, in equity, this defendant should be allowed such commission. The trial court was wrong in this finding.

The plaintiff contends that, if the defendant is allowed to charge 10 per cent. per annum on the money advanced by it, "then it follows of necessity that under the contract the *balance* of the proceeds of the sale must be allowed to the appellant *until* it receive 10 per cent. per annum, and *thereafter* the remainder of the proceeds of the sale should be divided *equally* between the parties to this action." By considering the 10 per cent. allowed to defendant as "profits," and not as compensation for the use of its capital, the plaintiff derives the argument that profits should be divided equally, and the express agreement that 10 per cent. is guaranteed to defendant means only that its share of the profits must amount to at least 10 per cent. on its investment, and that otherwise the profits must be divided equally. We do not so construe the contract. The defendant is allowed so large a percentage for the use of its capital —the full amount that the law will allow as interest—because of the risk it runs that there will be no profits, and because it will not in any event be entitled to a deficiency judgment against the plaintiff. The finding of the trial court is right in this particular.

American Security Co. v. Barker Co.

The contention that plaintiff should be allowed interest on the amounts collected by defendant as rents of the property, we think, is already answered. The trial court was right in the computation of interest as above stated.

The findings of the trial court in regard to the $500 donation to the Omaha Grain Exchange, and for the services of defendant in taking charge of the property and collecting the rents, should be changed as herein indicated, and for that purpose the decree is reversed and the cause remanded for a decree in accordance with this opinion.

REVERSED.

CORNISH, J., dissents.
LETTON, J., not sitting.

The following opinion on motion for rehearing was filed November 1, 1918. *Judgment modified, and motion overruled.*

SEDGWICK, J.

Upon considering the motion for rehearing in this case, we find that we were in error in saying in our former opinion, *ante,* p. 515: "By considering the 10 per cent. allowed to defendant as 'profits,' and not as compensation for the use of its capital, the plaintiff derives the argument that profits should be divided equally, and the express agreement that 10 per cent. is guaranteed to defendant means only that its share of the profits must amount to at least 10 per cent. on its investment, and that otherwise the profits must be divided equally. We do not so construe the contract." There is no doubt that, "in determining the amount of interest due the defendant for the moneys advanced by it for paying for the ground and improvements thereon, * * * the rule of partial payments should be applied, which is, that whenever the net amount of rents received shall equal or exceed the interest then due, then the net amount of rents shall be deducted from the amount of the principal and interest then

due." But the plaintiff is right in contending that the interest due the defendant is, under this contract, to be paid out of the defendant's share of the profits if the profits are sufficient for that purpose. That is, the contract was that the defendant should furnish the capital and the plaintiff should perform certain services specified in consideration for the profits that each of them contemplated would ensue, with the further guaranty on the part of the plaintiff that the profits in the deal would be sufficient so that the defendant's share thereof would amount to 10 per cent. on the net amount invested by it, and if the defendant's share of the profits were not sufficient to repay the money invested by the defendant, with 10 per cent. interest thereon, the defendant might recover the deficiency from the plaintiff. The rents received by defendant would be accounted for as partial payments of the money advanced.

The judgment of the district court is therefore further modified accordingly. The motion for rehearing is

OVERRULED.

LETTON, J., not sitting.