## STANDARD CLOTHING COMPANY v. HARRY WOLF.[1]

### No. 33,823.

December 29, 1944.

[1]Reported in 17 N. W. (2d) 329.

*Guesmer, Carson & MacGregor* and *Donald F. Pratt,* for appellant.

*Fowler, Youngquist, Furber, Taney & Johnson* and *Ralph H. Comaford,* for respondent.

PETERSON, JUSTICE.

This action was brought to determine in what shares the parties own a bank deposit of $22,522.03, representing the undistributed proceeds of a sale of merchandise under a written contract dated May 7, 1940. The parties call the sale a joint-operation sale of merchandise. When the contract was entered into, plaintiff owned two clothing and haberdashery stores in Minneapolis, one known as the downtown, and the other as the University or campus, store. Because it was unable to obtain a renewal of the lease of the property occupied by the downtown store, plaintiff decided to sell its merchandise and quit business. To that end, it entered upon the sale in question.

So far as here material, the contract provided that plaintiff's entire stock of merchandise should be sold at a sale to be conducted jointly by plaintiff and defendant during the period from June 1 to August 31, 1940; that plaintiff was to be represented by its vice-president, George C. Drohan; that he and defendant were to be, as they were called, the managers of operations; that out of the proceeds of the sale plaintiff should deduct the amount of its liabilities appearing on its books as of May 31 and of its net worth as of the same date, and that the balance of the proceeds of the sale, after payment of expenses and certain other items, should be divided equally between the parties.

Plaintiff's net worth was to be arrived at by taking the inventory value of its merchandise, which was $203,588.91, less two discounts of five percent of the stated amount and 22 percent of that amount as thus discounted, which made the net amount of the inventory $151,334.98, and less also "all liabilities appearing on the books and records" of plaintiff as of May 31, 1940. The contract provided: "This inventory shall not include any consigned merchandise." Defendant was authorized to buy goods on consignment to be sold during the sale, and the net proceeds thereof were to be divided the same as those from the sale of the inventoried goods. In addition to his share of the proceeds of the sale, defendant was to receive $60 a week salary.

The contract provided that "the operation of this business under this agreement shall only be charged with such expenses which are directly applicable to this period." The managers were required to keep accurate books of account, using plaintiff's office facilities and personnel for the purpose. The parties also agreed to make a final accounting immediately on the close of business on August 31, and that "all outstanding bills and obligations for merchandise, expense, or any other liability incurred either during or prior to the existence of this agreement, must be fully paid." There are numerous other provisions which will be referred to later so far as necessary in considering the assignments of error relating to questions concerning them.

The litigation involved the propriety of certain charges made by plaintiff which defendant claimed should be disallowed. The trial court found that plaintiff was entitled to $13,764.78 and defendant to $8,757.25 of the deposit. Plaintiff moved for a new trial and appeals from the order denying the motion.

The numerous assignments of error fall into a few groups according to the legal questions raised, *viz.*: (1) Those involving liabilities of plaintiff as of May 31, 1940; (2) those involving the question whether certain liabilities created after the date mentioned are expenses directly applicable to the sale period; (3) one involving whether the contractual discounts apply to certain shoes held by plaintiff on consignment; (4) those involving the application of the rules involved in the assignments mentioned to the conclusions of law; and (5) one relating to an error corrected below.

■ Since the questions for decision involve claims of right under the contract, it is important to ascertain what those rights are. The intention of the parties manifested by the language of the contract was that by the joint-operation sale plaintiff's entire stock of merchandise should be sold and converted into cash; that the proceeds of the sale should be applied, first, to the expenses thereof; second, to the discharge of all plaintiff's liabilities shown on its books as of May 31; third, to the payment to plaintiff of its net worth; and, fourth, that the balance should be divided equally

between the parties. The other provisions relate to specific matters involved in accomplishing this intention. The contract should be so construed and applied as to subserve and not to subvert the intention of the parties. Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N. W. 650, 93 A. L. R. 1393.

■ Several of the assignments of error relate to items involving plaintiff's liabilities as of May 31. In the final analysis, the question in each instance is whether the item represents such a liability.

(a) An item of $2,935.50, in which was included $85.50 unemployment insurance taxes, paid as executive salaries to Mrs. J. L. Lynch and G. C. Drohan, plaintiff's president and vice-president, respectively, during the sale period was disallowed. Prior to February 1940, Mrs. Lynch's salary was $7,800 per year or $150 per week, and Mr. Drohan's was $5,200 per year or $100 per week. In February, plaintiff by corporate resolution increased Mrs. Lynch's salary to $15,000 per year and Mr. Drohan's to $12,000. During March, April, and May, plaintiff paid Mrs. Lynch and Mr. Drohan in cash an amount equal to their salaries prior to the increase and credited them on its books with the amounts of the increases. On May 31, the credit liabilities for the amounts of the increases were paid. Defendant's objection was that the salaries on May 1 were the amounts paid in cash without the increases and that the payment of the salaries as increased in February during the time of the joint sale *changed* the salaries by increasing them in violation of a contract provision, as follows: "Salaries of officers and key employes [of plaintiff] in effect on May 1, 1940, shall not be changed during the term of this contract." The *change* of salaries was made by the resolution in February, not by the payments thereof afterward. Defendant conceded upon the argument that the resolution of February 1940 fixing the salaries created a liability to pay them, enforceable by action. That being true, it was a liability to be discharged out of the proceeds of the sale. The increases were *in effect* because plaintiff was legally obligated to pay them. Ordinarily, the words "in effect" mean to be in operation. Maize v. State, 4 Ind. 342; 28 C. J. S., Effect, p. 836. An obligation to pay is one that is

in effect. That meaning as the plain, ordinary one should be given to the words here. Bass v. Ring, 215 Minn. 11, 9 N. W. (2d) 234; 2 Dunnell, Dig. & Supp. § 1825. If plaintiff passed the resolution increasing the salaries, as defendant's argument suggested, with no intention that the increases should be effective, the salaries would have remained as they were prior to the resolution, and payment of the increased salaries after the sale began would have been a change thereof. This suggestion was entirely removed from the case by defendant's concession that the resolution created a legal liability for the salaries as increased. It follows that it was error to disallow the executive salaries in the amounts mentioned.

(b) The sum of $1,013.02, representing the part of plaintiff's personal property taxes for the year 1940 apportionable to the sale period, was disallowed upon the ground that it was not within the meaning of the contract an expense of the joint adventure directly applicable to that period. In disallowing payment of this item upon the ground stated, the court entirely ignored the provision of the contract that plaintiff's liabilities shown on its books as of May 1 should be paid out of the proceeds of the sale. The amount of the tax had not then been determined, because, in the very nature of things, it could not be, for the reason that the amount was to be determined by the tax levies thereafter to be made and spread. Minn. St. 1941, §§ 275.01 to 275.29 (Mason St. 1927, §§ 2055 to 2073, as amended). The amount was estimated upon the basis of the taxes of the preceding year, and this amount was entered in 12 monthly installments as items of expense accruing during the year. An examination of the books showed that the installments entered were for the estimated tax. The taxability of persons and property is determined as of May 1 for each year, by § 273.01 (§ 1984). County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942; State v. Continental Oil Co. 218 Minn. 123, 15 N. W. (2d) 542; 6 Dunnell, Dig. & Supp. § 9195. As Mr. Justice Mitchell pointed out in the Drake case, 40 Minn. 139, 41 N. W. 943, *supra*, the liability for taxes is fixed as of May 1 each year "for that year." It is true that the tax levies are made later and spread upon the tax

books, but the liability is determined as of May 1 and relates back to that date. 61 C. J., Taxation, § 1175. It makes no difference what property the taxpayer owned at any other time during the year. The tax does not accrue throughout the year, but is determined as of the day specified in the statute. 3 Cooley, Taxation (4 ed.) § 1062. Tax liability depends not on the average amount of stock on hand during the year, but on the amount on hand on the assessment day. Pennsylvania Coal Co. v. Porth, 63 Wis. 77, 23 N. W. 105. Where a person is engaged in business part of the year, but not on the assessment day, May 1 here, he is not taxable on that business at all. Field v. City of Boston, 10 Cush. (64 Mass.) 65. Hence it follows that plaintiff became liable for its 1940 taxes on May 1. This was a liability appearing on its books and consequently was under the contract here one to be paid out of the proceeds of the sale. That liability is one imposed by our tax laws; it was not in any way created by plaintiff's accounting practices. The only importance of the fact that the liability appeared on its books is that the proceeds of the sale were chargeable only with liabilities so appearing. Likewise, the tax was not an expense directly applicable to the sale period. There was and could be no separate tax liability against the joint adventure as such, because it was not in operation on the taxing day. Field v. City of Boston, *supra*. Nor could there be a tax against plaintiff for that period. County of Martin v. Drake, *supra*. Plaintiff's tax liability was antecedent to the joint adventure, but it was nonetheless a legal liability of plaintiff as of May 31 and, as such, was to be paid out of the proceeds of the sale. Plaintiff is entitled to only the part of the tax claimed by it. It was error to disallow the item. We think it should be said in justice to the court below that the emphasis of the claim that the part of the taxes claimed was an expense directly applicable to the sale period obscured in large degree the other claim that the tax was a liability of plaintiff as of May 31.

(c) In computing plaintiff's net worth, the sum of $2,020.12, for which plaintiff claimed to be liable, was rejected. This sum is composed of the following items: $1,683.44 moneys and credits taxes

for 1940, $278.30 capital stock tax for 1940, and $50 accrued expense. The taxes were entered upon plaintiff's books upon a monthly accrual basis the same as the personal property taxes, and appear thereon as a liability of plaintiff as of May 31. It has not been made clear to us what the $50 item is. The burden is upon plaintiff to show error, and, because it has failed to sustain the burden as to that item, we must affirm as to it. What has already been said concerning personal property taxes covers these tax items. For the same reasons that it was error to disallow the personal property tax, it was error also to reject the moneys and credits and the capital stock taxes. These items amounting to $1,961.74 are now allowed. The disallowance of the accrued expense claimed is affirmed.

(d) An item of $276.81 for payroll expense incurred during May for which plaintiff was liable was disallowed. It appeared on plaintiff's books as a liability as of May 31. For the reasons already stated, it was error to disallow the item.

■ A large number of items are for liabilities created subsequent to May 31. The proceeds of the sale are chargeable under the contract with such items only if they are expenses directly applicable to the sale period.

(a) Salaries for September, or part thereof, paid to its executive officers (its president, vice-president, and secretary-treasurer) and to employes for buying and advertising services were disallowed. The contract obligated the proceeds of the joint sale for the payment of plaintiff's liabilities as of May 31 and for the expenses of the joint sale "directly applicable to this period," meaning the one specified, viz., from June 1 to August 31. The salaries do not come within either category—they were not liabilities as of May 31, and they were not directly applicable to the sale period. The joint adventure had no need of such services after August 31. Furthermore, there was a contract provision that Mr. Drohan was to be a comanager of operations "until the 31st day of August, 1940." Clearly, he was not to be paid for services rendered to plaintiff after that date. The disallowance of the salaries was correct.

An allowance for services for the first two weeks of September in connection with the rendering of the account was made to plaintiff for Mrs. Lynch's salary without the increase voted in February, and to defendant at the contract rate of $60 per week. Plaintiff argues that it should have been allowed the full amount of Mrs. Lynch's salary at the increased rate, because defendant was allowed the full contract rate. Plaintiff has no grounds for complaint. There was no proof that her services were worth more than the amount allowed. As a matter of law, neither party was entitled to any allowance. Whether the relationship between the parties be regarded as that of a partnership or a joint adventure, the rights of the parties among themselves are governed by the same rules. Swanson v. Lindstrom, 151 Minn. 19, 185 N. W. 950; Church v. Odell, 100 Minn. 98, 110 N. W. 346. A partner is not entitled to compensation for his services in winding up the firm affairs after dissolution. McFarland v. McCormick, 114 Iowa 368, 86 N. W. 369; Loomis v. Armstrong, 49 Mich. 521, 14 N. W. 505; Efner v. Reynolds, 105 Neb. 646, 181 N. W. 552; 47 C. J., Partnership, § 866. Since the rights of joint adventurers, among themselves, are governed by the same rules as those applicable to partners, it follows that neither of the parties here was entitled to any compensation for services rendered in connection with winding up the affairs of their joint adventure. Since the allowance was unauthorized, plaintiff cannot complain that the amount thereof was not greater. Moreover, the allowance to plaintiff was greater than that to defendant.

(b) The amount of $196.17 plus $7.84 unemployment insurance tax thereon incurred for expense of the joint-operation accounting and credit department salaries for services after September 14, 1940, was disallowed. Evidently the disallowance was made because of the following provision in the contract: "that the expense of the Credit Department shall not be chargeable as an operating expense and at the time of settlement, the total expense so incurred shall be deducted from the total operating expense chargeable to this period." It is plain that if the expense in question had been

incurred during the period of the joint sale no allowance could be made therefor. The contract precludes it. The question here is whether the expense for such services *after* the contract period should be allowed. As to this matter the contract is silent. The services in question were rendered in winding up the joint adventure. Collecting moneys due a joint adventure is part of winding it up. In Maynard v. Richards, 166 Ill. 466, 481, 46 N. E. 1138, 1142, 57 A. S. R. 145, 151, in speaking of the winding up of a partnership, the court said:

"* * * The winding up or settling of the partnership affairs after the death of one of the partners may be said to consist, as a general thing, in selling the property, receiving moneys due the firm, paying the firm debts and the advances of the partners, returning the capital contributed by each partner, and dividing the profits."

To the same effect is Lamb v. Wilson, 3 Neb. (Unoff.) 496, 92 N. W. 167. In Wiggins v. Brand, 202 Mass. 141, 88 N. E. 840, the court held that one partner who assumed the duties of liquidation, in the absence of an express agreement therefor, was not entitled to compensation for such services. Among the services undertaken by the partner was that of collecting bills receivable. The court said (202 Mass. 145, 88 N. E. 840):

"* * * The partnership, while it had ceased to do business, not having been dissolved, it was the duty of each partner for their mutual benefit to aid in the settlement without compensation. * * * The defendant, moreover, having taken upon himself the duty of liquidation, and there having been no express agreement that he should be paid, must be held to have contributed his services, even if they may have been more onerous because of the litigation which arose in the collection of the outstanding debts."

Accordingly, plaintiff's claim for accounting and credit expense and unemployment insurance tax thereon should be disallowed.

(c) Tailor-shop expense subsequent to September 1, amounting to $26.98, for altering ready-made clothes sold by the joint adven-

ture, was disallowed. Upon the oral argument the disallowance was justified upon the theory that the joint adventure had incurred similar expense for similar services in connection with sales made by plaintiff prior to the time of the joint sale. Our attention has not been called to any evidence in the record to sustain that claim. The disallowance was not made upon that ground but upon the one that all expense was cut off as of September 1. The tailoring services were rendered to complete the business in which the joint adventure had been engaged. A part of the business was to alter ready-made garments. The joint adventure received a substantial benefit from the rendition of such services. Such services are in addition to and in excess of those involved in winding up the joint adventure, and for that reason the party rendering them should be compensated therefor. Maynard v. Richards, 166 Ill. 466, 46 N. E. 1138, 57 A. S. R. 145, and Lamb v. Wilson, 3 Neb. (Unoff.) 496, 92 N. W. 167, *supra.* It was error to disallow these expenses.

(d) Another item claimed by plaintiff involves a cash shortage of $22.49, which was discovered on September 3. There was evidence by Mr. Drohan to the effect that "cash sales had to be balanced every day." The question before the trial court was whether the shortage was one occurring during the sale period or afterward. The trial court adopted the view that it was not shown that this item should be charged to the sales period and disallowed it. There is evidence to sustain the finding. Hence it must be affirmed.

(e) Another item involves $50 paid as a gratuity to one of the salesmen, a Mr. Averill, when he quit. The right to pay gratuities was not expressly authorized by the contract. The evidence as to whether defendant consented to the payment of the gratuity is in conflict. The finding that he did not consent must be sustained. A gratuity given by a member cannot be charged against a joint adventure as an expense. American Security Co. v. Barker Co. 102 Neb. 515, 167 N. W. 780, 169 N. W. 257.

(f) The sum of $1,864.63 paid as bonuses to employes was disallowed. The amounts thereof were determined and paid in September after defendant had left Minneapolis. At that time the

employes had already rendered their services in connection with the joint sale. A bonus given as an inducement to the making of more strenuous efforts on the part of the employe has been held a legitimate and necessary expense in such cases. Forino Co. Inc. v. Karnheim, 240 Mass. 574, 134 N. E. 605. A bonus promised prior to the rendition of services as an inducement to perform them is a consideration for the promise; but a bonus paid without such a promise is a pure gratuity. The former may constitute a necessary business expense; the latter cannot. The evidence was in conflict as to whether defendant authorized the payment of the bonuses prior to the rendition of the services by the employes to whom the bonuses were paid and whether the services were rendered in advance upon the promised bonuses. The finding implicit in the disallowance of the bonuses is that there was no legal basis for authorizing their payment. That finding is sustained.

■ Although the contract provided that the "inventory shall not include any consigned merchandise," $1,836.25 worth of women's shoes held by plaintiff on consignment were included in the inventory and discounted at five percent and 22 percent, the same as inventoried merchandise. This clearly was contrary to the express provisions of the contract. The discount, $475.59, should be included as part of the value of the goods.

■ Numerous assignments of error relate to the conclusions of law to be drawn from the findings of fact. Since the conclusions which we order follow from our decision, there is no occasion to inquire whether the conclusions drawn below were correctly arrived at or not. Included in this group of errors is one which was corrected below. Plaintiff asserts that the correction was not adequate, but it has not been shown in what respects, if any, this is true. For that reason, we refuse to make any further correction.

Our conclusion is that the following items were erroneously disallowed: Executive salaries, $2,935.50; personal property taxes amounting to $1,013.02; moneys and credits and capital stock taxes amounting to $1,961.74; payroll expense, $276.81; and tailor-shop expense, $26.98. The discount of $475.59 was erroneously allowed.

The total of the items involved is $6,689.64. In order to adjust the account, one-half this amount, $3,344.82, should be added to the amount awarded plaintiff and the same amount subtracted from the amount awarded defendant. Plaintiff is entitled to $17,109.60 and defendant to $5,412.43 as their respective shares of the deposit. The decision below will be affirmed in part and reversed in part so as to reflect the adjustments in question.

Affirmed in part and reversed in part with directions in accordance with the opinion.

ON PETITIONS FOR REARGUMENT AND MODIFICATION.

On January 19, 1945, the following opinion was filed:

PER CURIAM.

Defendant petitioned for a reargument, which is denied. It presents nothing new. It is not the function of such a petition to afford the party an opportunity to reargue matters fully considered by the court in the opinion filed.

Plaintiff petitions for a modification of the decision. Our attention was not called to the fact that prior to the appeal the decision below had been modified by Judge Carroll so as to increase plaintiff's share of the deposit by the sum of $1,167.82. Therefore, our decision should be and it is hereby modified by adding that sum to plaintiff's share and deducting it from defendant's. The judgment should be that plaintiff is entitled to $18,277.42 instead of $17,109.60 and that defendant is entitled to $4,244.61 instead of $5,412.43.

So ordered.