**COUNTY OF RAMSEY, Petitioner, Appellant,**

v.

**LINCOLN FORT ROAD HOUSING LIMITED PARTNERSHIP, et al., Respondents.**

**No. C2-91-1419.**

Supreme Court of Minnesota.

Dec. 31, 1992.

Tom Foley, Ramsey County Atty., Ralph W. Peterson, Asst. County Atty., St. Paul, for appellant.

Timothy D. Kelly, Kelly & Berens, P.A., David E. Kirkman, Ravich, Meyer, Kirkman & McGrath, Minneapolis, for respondents.

Peter S. Popovich, Michael J. Galvin, Jr., Peter H. Seed, Briggs and Morgan, St. Paul, for amicus curiae.

GARDEBRING, Justice.

The basic facts in this case are not in dispute. On September 15, 1980, the Port Authority of the City of St. Paul ("Port Authority" or "Port") entered into an agreement with Austin/King Housing Enterprises ("Austin/King"). The agreement was denominated a "lease" and a "revenue agreement," under which the Port Authority agreed to provide money for Austin/King in return for 30 years of "rental payments," after which Austin/King could purchase the property in question for one dollar. Austin/King was required at the outset to deed to the Port Authority "merchantable title in fee simple."

In 1982, Austin/King assigned its interest in the revenue agreement to respondents, Lincoln Fort Road Housing Limited Partnership and Basswood Investment Partners. Respondents used this property until running into financial difficulties. They were unable to make the bond/rent payments due under the lease to the Port Authority and did not pay a portion of the real estate taxes. In November 1987, the Port initiated an unlawful detainer proceeding against Austin/King and respondents, seeking to enforce its termination and repossession remedy under Minn.Stat. § 469.-155, subd. 13 (1990). On or about November 23, 1987, the Port and respondents entered into a Settlement and Termination Agreement, and no later than January 3, 1988, all of respondents' interest in the project was terminated and transferred to the Port.

Appellant Ramsey County served various citations on respondents pursuant to Minn. Stat. § 277.06 on March 28, 1990, alleging that the respondents were personally liable under Minn.Stat. § 272.01, subd. 2, for real estate taxes amounting to $81,591.80 in 1987 and $159,161.48 in 1988. On May 8, 1990, the trial court found respondents personally liable for the taxes, and on September 21, 1990, entered an order for judgment against respondents in the amount of $240,-753.28. On January 3, 1991, the trial court denied respondents' motion for a new trial. On May 9, 1991, judgment was entered.

The court of appeals remanded the case to the trial court for a hearing "to determine the property's original owner" because it determined that the nature of the revenue agreement, and thus, the liability for real estate taxes, depended upon who owned the project. *County of Ramsey v. Lincoln Fort Road Housing Limited Partnership*, No. C2-91-1419, slip op. at 4-5, 1992 WL 54933 (Minn.App., filed Mar. 24, 1992) (unpublished opinion). On appeal to this court, appellant asserts that the statutory scheme under Chapter 469 is clear and mandates a finding of personal liability for the tax, irrespective of whether the revenue agreement is characterized as a true lease or as an equitable mortgage.

I.

The primary issue raised on appeal is whether the Port Authority, in entering into lending agreements which impose personal liability, must rely on "true" leases or whether it can use various hybrid mechanisms such as "financing" leases or "equitable mortgages." Respondents claim that only "true" leases are covered by the statutory scheme, whereas the Port asserts that any financing leases, including equitable mortgages, are covered within the Municipal Industrial Development Act ("MIDA"), Minn.Stat. ch. 469 (Supp.1991), thereby incorporating by reference personal tax liability, Minn.Stat. § 272.01, subd. 2 (Supp. 1991).

As an initial matter, this court must determine whether the Port Authority ever "owned" this property so as to exempt it from *ad valorem* taxes. While respondents admit that *exempt leased* property would entail personal liability for real estate taxes, they claim that this property was neither exempt nor leased. With respect to whether this property was ever exempt, section 7.01 of the lease explicitly provided that Austin/King would transfer

"merchantable title in fee simple" to the Port Authority. Although the Port transferred the property back to the company, the Port clearly maintained legal title to the property throughout, and full title and possession at least temporarily. This is sufficient to constitute "acquired, owned, leased, controlled, used, or occupied by the port authority" within the meaning of Minn.Stat. § 469.059, subd. 2 (1990). Therefore, this property was exempt from *ad valorem* taxes in the hands of the Port Authority.

▇ This does not end the inquiry, however. This court must also determine if such a transfer arrangement automatically imposes personal liability on respondents for the outstanding real estate taxes irrespective of whether it is deemed a "lease" or an "equitable mortgage." This debate revolves around the interaction between Minn.Stat. § 469.155, subd. 5, and Minn. Stat. § 272.01, subd. 2. Section 469.155, subd. 5 provides, in relevant part:

> During the term of the revenue agreement * * * a tax shall be imposed and collected upon the project or, pursuant to the provisions of section 272.01, subdivision 2, for the privilege of using and possessing the project, in the same amount and to the same extent as though the contracting party were the owner of all real and personal property comprising the project.

Minn.Stat. § 469.155, subd. 5 (1990). The term "revenue agreement," in turn, is defined broadly to include a "lease, mortgage, direct or installment sale contract, loan agreement, [and] take or pay or similar agreement," Minn.Stat. § 469.153, subd. 10 (1990), a definition which certainly encompasses the financing arrangement in this case.

Despite this broad language, respondents argue that the phrase "upon the project" in Minn.Stat. § 469.155, subd. 5 is synonymous with *in rem* taxation, thereby absolving them from personal liability. While both parties concede that the addition of this "upon the project" language in 1983 was merely a clarifying amendment, *see* 1983 Minn.Laws, ch. 365, § 4, respondents argue that this provision imposes personal liability only in the case of true leases, with *in rem* tax imposed in all other situations.

This interpretation, however, totally misconstrues the nature of these clarifying amendments. The 1975 amendments, which created the term "revenue agreements," *see* 1975 Minn.Laws, ch. 422, § 13, necessitated this amendment because certain types of financing included within this definition, including direct sales, loan agreements unsecured by mortgages, and take and pay agreements, could only involve *in rem* taxation because the Port Authority in those cases would hold *neither* title to nor any right to repossess the properties involved. In other situations, however, where the Port maintains title or the right to repossess, as in this case, the latter portion of Minn.Stat. § 469.155, subd. 5 controls, thereby implicating the taxing provisions of section 272.01.

With respect to taxation, Minn.Stat. § 272.01, subd. 1 (1990), provides generally that all real and personal property in the state is taxable. Minn.Stat. § 272.01, subd. 2, the section referenced in Minn.Stat. § 469.155, subd. 5, describes the tax consequences for *exempt* property:

> (a) When any real or personal property which is exempt from ad valorem taxes, and taxes in lieu thereof, is leased, loaned, or otherwise made available and used by a private individual, association, or corporation in connection with a business conducted for profit, there shall be imposed a tax, for the privilege of so using or possessing such real or personal property, in the same amount and to the same extent as though the lessee or user was the owner of such property.
>
> *   *   *   *   *   *
>
> (c) Taxes imposed by this subdivision are payable as in the case of personal property taxes and shall be assessed to the lessees or users of real or personal property in the same manner as taxes assessed to owners of real or personal property, except that such taxes shall not become a lien against the property. When due, the taxes shall constitute a debt due from the lessee or user to the

state, township, city, county, and school district for which the taxes were assessed and shall be collected in the same manner as personal property taxes. If property subject to the tax imposed by this subdivision is leased or used jointly by two or more persons, each lessee or user shall be jointly and severally liable for payment of the tax.

Minn.Stat. § 272.01, subd. 2 (1990). Since the property in the case was exempt in the hands of the Port before being "made available and used by ... a corporation in connection with a business conducted for profit," this section clearly imposes personal liability, especially in light of the language indicating that taxes will *not* become a lien against property but will instead be collected in the same way as personal property taxes. *Id.*

Case law also supports the notion that section 272.01 imposes personal tax liability. In *Grava v. County of Pine*, 268 N.W.2d 723 (Minn.1978), this court held that a tax similar to that in Minn.Stat. § 272.01, subd. 2 should be imposed personally rather than *in rem*. *Id.* at 727–28. The court noted that this section was based, almost verbatim, on a Michigan statute which the United States Supreme Court held as imposing a personal obligation rather than an *in rem* tax on the underlying property. *Id.* at 727 (*citing United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958)).

In addition, the purposes underlying the creation of the Port Authority and MIDA comport with personal tax liability. MIDA's purposes include "the active promotion, attraction, encouragement, and development of economically sound industry and commerce through governmental action." Minn.Stat. § 469.152 (1990). In order to accomplish these broad objectives, the Port Authority may provide low-cost financing through a wide array of financing mechanisms which enable private entities such as respondents to attempt projects that they could not otherwise undertake. If the financing arrangement in this case were construed to impose only an *in rem* tax which could be extinguished upon default, this would lead to the anomalous result that private business entities would have the benefit of low-cost financing for their business ventures while escaping the quid-pro-quo personal liability for real estate taxes if the business fails. This would in fact hinder, rather than facilitate, local government efforts to promote economic development and would therefore undermine the purposes behind MIDA. Thus, we hold that the financing arrangement in this case, whether categorized as a lease or an equitable mortgage, fits within the statutory framework enacted in Minn.Stat. §§ 469.155, subd. 5, and 272.01, subd. 2, and imposes personal liability on the respondents.

## II.

Respondents assert that they were denied their due process right to a fair hearing. The collection of personal property taxes is governed by Minn.Stat. ch. 277, and respondents' right to challenge the assessment and collection of personal property taxes is governed exclusively by chapter 277. *See Acton Constr. Co. v. Commissioner of Revenue*, 391 N.W.2d 828, 835 (Minn.1986) (*citing State v. Bies*, 258 Minn. 139, 146, 103 N.W.2d 228, 234–35 (1960)). Because respondents did not pay the taxes or file a petition to object to the taxes under Minn.Stat. § 277.011 (1990), warrants for the delinquent taxes were issued and served pursuant to Minn.Stat. § 277.03 (1990) on August 22, 1989, more than seven months prior to the hearing of May 8, 1990. Respondents failed to pay the delinquent taxes as directed by the warrants, and citations were therefore issued pursuant to Minn.Stat. § 277.06 (1990) and served upon respondents on March 28, 1990, more than thirty days before the hearing. Respondents appeared at the hearing and were given an opportunity to show cause why they should not have to pay the delinquent taxes.

In addition, the show cause hearing on May 8, 1990, was not the respondents' only opportunity to be heard. The statute in chapter 277 provides two notices, the warrant and the citation, and two opportunities for hearings, a tax court hearing and a

show cause hearing. Respondents chose not to file a petition pursuant to Minn.Stat. § 277.011 (1990), which would have granted them a trial before the Minnesota Tax Court to contest assessment of the tax. Instead, they chose to rely upon the show cause hearing, in which they failed to meet their burden of showing cause why judgment should not be entered against them. Thus, they were granted all of the procedural rights afforded by statute, and they are estopped from asserting that they were denied due process which they failed to exercise. *See Sluka v. Johnson,* 177 Minn. 598, 600, 225 N.W. 909, 910 (1929).

■ Respondents also claim that the trial court erred in determining that this matter was not governed by the Rules of Civil Procedure and in denying respondents' access to discovery procedures. Rule 81 of the Minnesota Rules of Civil Procedure provides that the rules do not govern proceedings listed in Appendix A. Minn.R.Civ.P. 81. Appendix A in turn expressly lists chapter 277 as one of the proceedings not governed by the rules. Thus, the Rules of Civil Procedure are inapplicable, and the trial court ruled properly.

■ As for discovery, when unchallenged taxes are delinquent, a summary procedure has been established which allows a taxing authority to obtain a judgment. Minn.Stat. § 277.06 (1990). This procedure involves issuance and service of a citation, a show cause hearing at least 30 days later, and entry of judgment. *Id.* Allowing discovery prior to the show cause hearing would undermine the procedures delineated in and purposes underlying this statute. Thus, no error was committed.

## III.

■ Finally, respondents claim that the trial court erred in holding them liable for taxes in 1988. Respondents submit that because these taxes are *payable* as personal property taxes, *see* Minn.Stat. § 272.01, subd. 2(c) (1990), the court must consider the "due" date of personal property taxes.

This argument misconstrues the applicable statutory standard and assumes that the word "due" connotes "payable" rather than "owing." In fact, section 272.50 provides:

> The taxes assessed upon personal property * * * shall be a first and perpetual lien * * * upon all of the personal property then owned by the person assessed from and including January 2 in the year in which they are levied, until they are paid.

Minn.Stat. § 272.50 (1990). In addition, several cases have held that personal property taxes are "due" from the date of assessment even though they are not payable until the following year. *See, e.g., Stoltzmann v. County of Ramsey,* 312 Minn. 186, 192, 251 N.W.2d 130, 134 (1977); *Standard Clothing Co. v. Wolf,* 219 Minn. 128, 133–34, 17 N.W.2d 329, 333 (1944). Liability for these taxes relates back to the date of assessment, *Standard Clothing,* 219 Minn. at 133–34, 17 N.W.2d at 333, and neither the destruction of the property nor surrender of the leasehold can alter the liability which has already attached. *See Stoltzmann,* 312 Minn. at 192, 251 N.W.2d at 134 (1977) (*quoting County of Martin v. Drake,* 40 Minn. 137, 138, 41 N.W. 942, 943 (1889)). This result is also consistent with the overall language of Minn.Stat. § 272.-01, subd. 2 (1990), because this section should be regarded as authorizing the implementation of the collection procedures of ch. 277 rather than as according a defense against the substantive obligation merely because of changed circumstances occurring prior to the time for payment. Thus, we hold that respondents remain liable for the 1988 taxes on the property.

Reversed.